Powell v. Messer.

18  401
29a 232

SAMUEL G. POWELL AND ANOTHER, v. CHARLES MESSER'S ADM'R.

It is the right of a party to have the jury instructed upon the law of the case; but, when this has been done, more cannot be required. Therefore, the Court is not required to repeat a principle of law, which has already been given in charge to the jury, though under a different form of expression; and ought not to do so, where such repetition would give undue prominence to the principle, the repetition of which is requested.

*Prima facie,* the execution of a bill or note in the name of the firm by one partner, binds the whole. The burden, therefore, of proving a presumptive want of authority, and of course fraud, (for that necessarily follows,) lies upon the co-partners.

According to the American decisions, where the payee of a note against a partnership, sues the partners, and it is proved that the note was given by one of the partners for his private debt, which was known to the payee, it devolves on the payee to prove the acquiescence or consent of the other partners ; but, it would seem that according to the English decisions, it devolves o the other partners, in such a case, to prove their want of knowledge, or dissent.

See the case for evidence which was held sufficient to sustain the verdict for the plaintiff, where the defence was, that the note sued on was given to the plaintiff, by one of the defendants, who were partners, for his individual debt.

Appeal from Wharton. Tried below before the Hon. James H. Bell.

Suit by Charles Messer, commenced February 17th, 1855, against John P. Carson, Samuel G. Powell and Charles W. Coen, late partners trading under the name of Carson & Co., on a note signed Carson & Co., dated March 1st, 1853, for $1124 28, with interest at ten per cent. from date, payable to plaintiff seven months after date ; with a credit of $100, Oct. 20th. 1853. Powell and Coen answered jointly, denying that said note was signed by them or by their authority, and alleging that it was given by Carson for his individual debt to Messer. This answer was supported by affidavit of Powell. The death of plaintiff was suggested, and his administrator made a party.

The evidence was as follows : The plaintiff read the note and indorsement of credit : and then called Jackson Rust, who stated that, at the time of the execution of the note sued on, the firm of Carson & Co. was composed of John P. Carson, Samuel G. Powell and Charles M. Coen, the defendants in this suit ; that the firm did business in Wharton as merchants ; that Carson resided in Wharton and had the sole management

of the business of the firm ; that Powell and Coen lived in Matagorda and did business there as merchants in the name of Powell & Coen ; that the signature to the note sued on was in the hand-writing of John P. Carson.

The defendants called William B. Wilson, who stated that he saw the note sued on when it was executed ; that he was a clerk in the store of Carson & Co ; that when the note was executed, one Brown, who was the book-keeper in the house of Carson & Co., told witness to take notice that Carson was signing the name of the firm to a note given for his individual debt. Carson had previously sold some cattle to Messer. Carson and Messer had several settlements, at which times notes were renewed. Messer had procured notes against Carson to an amount larger than the sum he owed Carson for the cattle. At the time the settlement was made between Carson and Messer, which resulted in the execution of the note sued on, Messer's claim against Carson was about nineteen hundred dollars. The amount was reduced by Carson giving a draft on Powell & Coen for about two hundred dollars, and by other small payments. The draft was drawn in the name of Carson & Co., and Powell & Coen paid it. When the note sued on was given for the balance due Messer, an entry was made of the transaction in the books of Carson & Co. Previous settlements between Carson and Messer had not been entered in the books of Carson & Co. John P. Carson and some other person, not Powell & Coen, had formerly done business as merchants in the town of Wharton under the name of Carson & Co.

Plaintiff then called Callaway, who testified that he knew the firm of Carson & Co. in Wharton, and did business with them in 1853 ; that in 1851 he gave his note to one Tilley for about twenty-three hundred dollars ; that Tilley transferred the said note to Messer ; that Messer transferred it to Carson & Co.; that Carson & Co. transferred it to William R. Thomas ; that he sold his cotton to Carson & Co., and got the the means to pay said note.

William B. Wilson was then recalled, who stated that the cotton of Callaway was shipped to R. & D. G. Mills of Galveston, for Carson's individual account, to meet some drafts that he had drawn in the purchase of some mules. When witness was asked how he knew this, he answered that he had seen no (an ?) an acount of the cotton from Messrs. R. & D. G. Mills.

The Court charged the jury, without request, as follows :

The jury are instructed that all the partners of a firm are bound by the acts of each of the partners in the course of the partnership business. Where one of several partners executes a promissory note in the name of the partnership, all the partners are bound by the contract, unless it is clearly shown that the note was executed for the individual debt of the partner who executed it. And the proof that the note was made for the individual debt of the partner making it, devolves upon the other partners who disclaim the obligation of the note, and not upon the holder of the note.

The other partners cannot be held bound by the execution of a note by one of the partners for his individual debt, unless they admit the obligation of the contract upon them after it comes to their knowledge.

The following instructions were asked by the defendants and refused :

1st. That if they believe from the evidence that Messer had a claim against Carson individually, and not against Carson & Co., and if they further believe that the note sued on was given by Carson on settlement of such individual liability of Carson, the other members of the firm are not liable for its payment, and it makes no difference that he entered the note in the books of the firm.

2d. That one partner of a mercantile firm has no authority to bind the firm by any transaction not in the regular course of the business of the firm, and has no authority to give the note of the firm for his individual debt ; and the party who

takes the note of a firm, executed by one of the partners for his individual debt, takes it with notice that the partner is exceeding his authority.

3d. That if they believe from the evidence, that the note sued on was made by Carson to take up an individual debt of Carson to Messer, the other members of the firm are not liable for its payment, unless their consent has been proved.

Verdict and judgment against all the defendants for the amount of the note and interest, less the credit of $100. Motion for new trial overruled, &c.

*J. B. & G. A. Jones,* for appellants.

*G. Quinan,* for appellee, cited Doty v. Bates, 11 Johns. R. 545 ; 1 A. K. Marsh. 39 ; 12 B. Mon. 11 ; Le Roy v. Johnson, 2 Peters, 197 ; Foster v. Andrews, 2 Penn. R. 259 ; 4 Tex. R. 259 ; 10 Id. 196 ; Bradbury v. Williams, Dallam ; 2 Hovenden on Frauds, 154 ; Collyer on Part. 483 ; Perry v. But and Banks, 14 Geo. R. 708.

WHEELER, J. Two grounds are relied on for reversing the judgment : first, that the Court erred in refusing instructions asked by the defendants ; second, that the verdict was not warranted by the evidence.

The general correctness of the charge of the Court is not questioned ; and there is nothing better settled in the practice of this Court, than that a judgment will not be reversed on the account of the refusal of instructions, where the law of the case has been fully and accurately given in the charge to the jury. It is the right of the party to have the jury instructed upon the law of the case ; but when this has been done, more can not be required. Where the Judge has embodied in his charge rules of law applicable to the case, in such form and

connection as to give to each no more than its due relative prominence, to repeat portions of the charge in the form of distinct and independent propositions, may not unfrequently have the effect to give to the principles thus enunciated an undue prominence and importance in the minds of the jury, and thus to mislead them in the application of the law to the evidence. It is the manifest duty of the Court to guard against such a consequence; and to that end, it may be proper to refuse instructions to which there is no objection in point of law. Legal propositions, not wholly inapplicable to the case, may be so framed and presented, as to render the giving of them, in the form in which they are proposed, manifestly improper. Instances of this kind are not unfrequent in practice; and hence has arisen the rule, that the Court shall not be required to repeat a principle of law, which has already been given in charge to the jury, though under a different form of expression. The present is a fit case for the application of the rule. The instructions refused recapitulate under different forms of expression, a doctrine, which is, in general, correct: that is, that one partner cannot bind the firm to the payment of his individual debt. But in its application to the facts of this case, it required to be considered in connexion with other principles, which the charge of the Court contains; and to have given the instructions as asked, without the additions and qualifications necessary to the correct application of the law to the case before the Court, would have been to give an undue prominence to this doctrine, in the minds of the jury, and possibly to have misled them.

There is no question as to the rule, that if a person takes a partnership security from one of the partners, for what is known at the time to be an individual debt of the partner who gives the security, the other members of the firm will not be bound by it. This principle was distinctly stated in the charge. There could be no question as to that. But whether the note sued on was taken for the individual debt of the

partner who gave it, and known to be such by the creditor, was a question ; and it was matter of defence, which it devolved on the defendants seeking to absolve themselves from liability, to prove. *Prima facie,* the execution of a bill or note in the name of the firm by one partner binds the whole, The burden therefore of proving a presumptive want of authority, and of course fraud, for that necessarily follows, lies upon the copartners. (Story on Partnership, Sec. 133, n. 3d ed.; 11 Johns. R. 544, 546-7.) But when the fact is once established, that the partnership security was given for the individual debt of one of the partners, then, according to the American authorities, it devolves on the creditor to prove the acquiescence or consent of the other partners in order to hold them bound. In England the rule seems to be different. In Dob v. Halsey, (16 Johns. R. 34,) Chief Justice Spencer stated the difference between the decisions in this country and England to be, that in this country, at least in New York. the Court required the separate creditor, who had obtained the partnership paper for the private debt of one of the partners, to show the assent of the whole firm to be bound ; while in England, the burden of proof was on the other partners to show their want of knowledge, or dissent. (See Rogers v. Batchelor, 12 Peters R. 229, and authorities collected in the notes to Story on Partnership before cited, and see 2 Robinson's Practice, 334-5.) The charge of the Court asserts the rule, as held in this country, as to the burden of proof, which was certainly most favorable to the defendants.

The true questions in the case, which the jury were to decide, were, whether the note was given for the individual debt of the partner who gave it, whether this was known to the plaintiff, and if it was given for what was known to be the individual debt of the partner, whether the defendants consented to the transaction. These were the questions which arose upon the evidence. And thereupon the Court, adapting the charge to the very case in hand, told the jury, in substance, that it devolved

defendants, who disclaimed the obligation of the note, to prove that it was given for the individual debt of their copartner. And if it was so given, the defendants were not bound unless they had admitted the obligation of the contract. The charge was correct, and has the merit of being clear, concise, pertinent to the evidence, and sufficiently comprehensive to enable the jury rightly to understand the law of the case. And there was no error in refusing the instructions asked by defendants.

It only remains to consider whether the verdict of the jury was warranted by the evidence. And we are of opinion that it was. It was not conclusively proved that the note was given for the individual debt of the partner ; or that the transactions and dealings between the parties, was of such a nature, as that the creditor knew, or should have known, that it was not on account of the partnership, but for the individual debt of the partner, that the note was given. But if it was given for what is known to be his individual debt, there are circumstances strongly tending to the conclusion that it was with the consent of his copartners. It was entered upon the books of the firm ; it was the subject of remark by their book-keeper and clerk at the time, whose duty it was to apprise them of it ; and though they did not reside at the place, it is quite improbable that they remained ignorant of it until after the bringing of this suit and the death of the creditor. Moreover they paid the draft drawn for a part of what is said to be the same individual debt. It is not probable that they paid this draft without knowing on what account it was given. It is scarcely to be supposed that they were so indifferent to the manner in which their co-partner was managing their affairs, as not to have obtained information of this transaction ; and their silence for such a length of time, under the circumstances, is very cogent evidence that it was with their consent. Certainly, it would seem, the creditor had reasonable ground of belief that the partner with whom he dealt was acting with

the consent of the other partners ; and that, according to the English authorities, was sufficient to bind them. In Frankland v. McGusty, (1 Knapp, R. 315,) Sir John Leach, (Master of the Rolls,) held this language : " I take it to be clear, from all the " cases on the subject, that it lies upon a separate creditor, who " takes a partnership security for the payment of his separate " debt, if it be taken *simpliciter*, and there is nothing more in " the case, to prove, that it was given with the consent of the " the other partners. But there may be other circumstances " attending the transaction, which may afford a separate credi- " tor a reasonable ground of belief, that the security, so given " in the partnership name, is given with the consent of the " other partners ;" and he cites the case of Ridley v. Taylor, (13 East, 175,) and continues: " In that case, the bill was " dated eighteen days before its delivery by the partner to his " separate creditor, and it was not known by the creditor that " it was drawn and indorsed by the debtor alone ; and the bill " was to a greater amount than the separate debt. The Court " therefore were of opinion, that there was reasonable ground " for the separate creditor believing it not to have been " given to him in fraud of the partnership, and that the gene- " ral presumption, that a partnership security, when applied in " payment of a separate debt, is in fraud of the partnership, " was repelled by the particular circumstances which belonged " to that particular occasion. Upon a consideration therefore " of all the authorities, I am of opinion, that the law is, that, " taken *simpliciter*, the separate creditor must show the knowl- " edge of the partnership ; but if there are circumstances to " show a reasonable belief, that it was given with the consent " of the partnership, it lies upon the partners to prove the " fraud." But taking the rule of the American Courts, as stated by Judge Story, that when a note or security of the firm has been taken in discharge of a separate debt of one partner, the burden of the proof is on the creditor or holder to show circumstances sufficient to repel every presumption of

fraud, or collusion, or misconduct, on his part, (Story on Part. Sec. 133,) or by Chief Justice Spencer, that the separate creditor who has obtained the partnership paper for the private debt of one of the partners must show the assent of the whole firm to be bound, (Dob v. Halsey, 16 Johns. R. 34,) and assuming that the proof sufficiently shows that the note was taken for the private debt of the partner, we think the evidence sufficient to warrant the jury in finding that the transaction was free from fraud, and that the note was given with the consent of the defendants. That the partner who gave the note should have drawn upon his copartners for a part of the same debt, and that they should have paid the draft, and the entry of the note in the books of the firm, are strong circumstances to repel the inference of fraud or collusion, and to show that the transaction was known to the defendants, and that they consented that the partnership might be bound for the payment of the debt. We are of opinion, therefore, that there was evidence sufficient to warrant the verdict; and that there is no error in the judgment; it is therefore affirmed.

Judgment affirmed.