# BLAIR-BAKER HORSE COMPANY *v.* FIRST NATIONAL BANK OF COLUMBUS.

### [No. 20,402.   Filed January 5, 1905.]

1. EVIDENCE.—*Principal and Agent.—Relation.—Declarations of Agent.*—The casual declarations of a person alleged to be an agent are not competent as evidence to establish the fact of agency, when such fact is denied by the alleged principal. p. 82.
2. TRIAL.—*Instructions.—Including Complaint.*—It is not error for the court to include the pleadings in an instruction, but the better practice is, especially where the pleadings are voluminous, to advise or instruct as to the substance of the issues. p. 84.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Action by the First National Bank of Columbus, Indiana, against the Blair-Baker Horse Company. From a judgment for plaintiff, defendant appeals. Transferred from the Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*L. P. Harlan, Ephraim Marsh* and *William W. Cook,* for appellant.

*Henry Warrum* and *Charles S. Baker,* for appellee.

JORDAN, J.—Appellee, a national bank engaged in doing a general banking business in the city of Columbus, Indiana, prosecuted this action to recover money alleged to have been obtained from it by appellant. The latter is an incorporated company engaged in the business of buying and selling horses, etc., at the city of Indianapolis.

In substance, the first paragraph of the complaint alleges that the defendant is indebted to the plaintiff in the sum of $1,500, for money had and received by it for the use and benefit of plaintiff. By the second paragraph it is alleged that the defendant is indebted to the plaintiff in the sum of $1,500 for money paid by the plaintiff for the use of the defendant at its request. The third paragraph charges, in substance, that the plaintiff is a duly authorized national bank; that the defendant was engaged in the business of buying and shipping horses and mules at Columbus, Indiana; that it carried on its said business by and through one Charles Decker, as its agent; that said Decker paid for stock purchased by him for defendant by making drafts upon the latter and its predecessors, Blair, Baker & Walter, "in favor of plaintiff, and by depositing the amounts of such drafts in the bank of plaintiff at Columbus, Indiana, and by checking against such deposits to the person from whom he purchased the live stock; that said defendant and its predecessors aforesaid well knew that said Decker was holding himself out as the buyer or purchasing agent of the defendant and said Blair, Baker & Walter, and that plaintiff gave credit to said Decker on account of the credit of the defendant, and, by reason of said agency; that said business relations continued for a period of about five years, and the money so furnished by plaintiff and paid out by said Decker as aforesaid amounted to $125,000; that on November 23,

1901, said Decker drew his draft as aforesaid for $1,000, and placed the same to his credit as aforesaid, and checked against the amount for mules and horses purchased for the defendant to the amount of $1,181.83; that said draft was duly presented to defendant on November 25, 1901, and the same was dishonored, and payment therefor refused; that defendant accepted the stock so purchased and paid for as aforesaid by the money so advanced on said draft and overdraft aforesaid, and accepted the benefits of the use made by said Decker of said money; that plaintiff demanded payment of said amounts from the defendant, which was refused, and the same is due and unpaid."

Answer, general denial. On the issues joined, the cause was submitted to a jury for trial, and a general verdict was returned in favor of appellee for the sum of $1,150.16. Over appellant's motion for a new trial, assigning various reasons therefor, judgment was rendered in favor of appellee for the amount assessed by the jury.

Numerous alleged errors are discussed by appellant, and relied upon for a reversal, among which are the following: (1) Erroneous ruling of the court in admitting certain evidence in favor of appellee; (2) error in giving certain instructions to the jury.

The evidence in the cause shows that the predecessor of appellant was the firm of Blair, Baker & Walter. This firm was engaged in the business of buying and selling horses and mules at the stock-yards in the city of Indianapolis. On March 12, 1901, the firm was incorporated under the name of the Blair-Baker Horse Company, and continued to do a general commission business at said stock-yards. The evidence discloses that, as a general rule, appellant's method of doing business, both before and after its incorporation, was to receive horses and mules consigned to it by horse buyers and shippers. The horses and mules so consigned would be sold by the company for the consignor, and after its commission—being a certain amount per head—

and the expenses of yardage, feeding and other expenses were deducted from the proceeds of the sales, the remainder would be entered on the company's books to the credit of the consignor or shipper.

The cashier of appellee bank testified that in March, 1897, Mr. Blair, of said firm of Blair, Baker & Walter, came to the bank at Columbus, Indiana, and was introduced to him by Mr. Lucas, the president. The witness further testified as follows: "He [Blair] asked that I would arrange to cash drafts to be made by Charles Decker; that he wanted to establish a buyer there in the market; that he would honor the checks or drafts drawn by Mr. Decker on them. He made no limit either as to the amount or time, but he would want it so Mr. Decker could draw money on his own check." This witness also testified that at other times, in the bank, after the occasion in question, Blair told him that "Decker was all right, that he was their buyer, and that they would furnish him the funds." The witness further testified that, in pursuance of the arrangement made as above mentioned, the bank from time to time cashed drafts drawn by Charles Decker on the firm of Blair, Baker & Walter, and so continued to do after the incorporation of the company, until November 23, 1901.

It appears that when Decker would draw a draft on the company the bank would give him credit for the same as a deposit for the amount thereof. Against this deposit Decker would draw checks in payment for horses purchased by him, and for expenses or debts incurred by him other than for the purchase of horses or mules. All of these checks were honored and paid by the bank, and at times the bank permitted him to overdraw his deposit. All of the drafts drawn by Decker through the bank on the Blair-Baker Horse Company were paid by the latter until November 23, 1901. The draft of that date it failed and refused to pay, assigning as a reason therefor at the trial that Decker had become largely indebted to the company. The nonpay-

ment by appellant of this latter draft led up to the commencement of this action.  Blair, on the witness-stand, denied that he had made any arrangement with the bank to pay drafts drawn by Decker on his company, and also denied that the conversation between him and the cashier, as testified to by the latter, at any time or place, occurred. In fact, Blair, together with others who were officials in appellant company, gave evidence in denial of the alleged fact that Decker in any manner acted as appellant's agent either in drawing the drafts in question, or in purchasing horses which he shipped to said company.  They also denied that the company had in any manner held Decker out to the appellee and to the public in general as the company's agent, or that it had represented that he was acting in that capacity.  In fact, there is evidence given by witnesses introduced in behalf of appellant and appellee going to show that Decker was not the agent of appellant either in purchasing or paying for horses which he shipped to said company. Decker, as one of appellee's witnesses, testified that he was not acting as the company's agent in the transaction in controversy.  He testified that he bought the horses in Bartholomew county and the vicinity thereof, and paid for them himself, and shipped them to appellant to be sold on commission.  If any profits were realized out of the sale of the horses, they belonged to him, and all losses sustained by such sales were borne by him.  He testified that the money which he used in paying for the horses purchased by him was secured by his drawing drafts on appellant payable to appellee.  Upon drawing a draft the appellee would credit the amount thereof to his deposit account in the bank, and would pay the checks drawn by him out of such account. All of his checks, whether drawn in payment of horses purchased by him, or to defray other expenses or debts which he had incurred, were paid from the same deposit.  We have deemed it proper to give the above outline of the evidence,

as it will serve to reveal more fully the fact that the court committed reversible errors in admitting evidence in behalf of appellee, as hereinafter shown.

1.  In the examination of Jerome Wessel, a witness testifying in behalf of appellee, its counsel was permitted to ask him if he had ever heard Mr. Decker (meaning Charles Decker whom appellee claimed was the agent of appellant) say anything about the relationship which existed between him and Blair, Baker & Walter, or the Blair-Baker Horse Company. The witness responded that he had. He was then asked what he heard Decker say, and how many times. The witness in response to the question, testified as follows: "I heard him say a good many times that he was using Blair and Baker's money to buy horses, and that he was buying for them." Appellee was also allowed to ask another witness, William Schooler, who testified in its behalf, if he had ever heard Decker say anything concerning his relationship to the Blair-Baker Horse Company. In response to this question the witness testified that he heard him say that he had bought with Blair and Baker's money. These questions were propounded to the witnesses over the objections of appellant, and the evidence elicited thereby was likewise permitted to go to the jury over their objections and exceptions.

As previously shown, appellant's claim was that Decker was not buying horses for it, nor with its money; that he was using his own money in the purchase of horses; and that in the transaction in question the relationship of principal and agent did not exist between it and him. The declarations in question were made by Decker during casual conversations between him and the witnesses who testified thereto for appellee. The questions propounded to these witnesses disclosed upon their face that they were intended to elicit evidence from the witnesses in respect to the declarations of Decker for the purpose of proving that he was buying and shipping horses as the agent of appellant, and

that he was using its money, and not his own, for that purpose.

It is earnestly insisted—and properly so we think—that the court, under the circumstances, committed a reversible error in permitting the declarations of Decker to be given in evidence. It is a principle of law, well affirmed by the authorities, that where the agency of another is called in question, the declarations of the agent made in the absence of the principal are not competent to prove the agency. Neither are they admissible as evidence to establish the extent of such agency. It is true, as a general rule, that the declarations or admissions of an agent made during a transaction which is within the scope of the agency are competent evidence against the principal as a part of the *res gestae,* but this rule does not extend so far as to authorize them to be admitted for the purpose of establishing the relation of principal and agent. *Tomlinson* v. *Collett* (1834), 3 Blackf. 436; *Trustees, etc., v. Bledsoe* (1854), 5 Ind. 133; *Union Cent. Life Ins. Co.* v. *Thomas* (1874), 46 Ind. 44; *Johnston Harvester Co.* v. *Bartley* (1882), 81 Ind. 406; *Coon* v. *Gurley* (1874), 49 Ind. 199; Gillett, Indirect and Collat. Ev., §36; 1 Am. and Eng. Ency. Law (2d ed.), 690; 1 Ency. Ev., 546.

Conceding, for the sake of argument, that the agency of Decker was clearly established by evidence aside from his declarations, and that the latter were not admitted to prove the agency, the question still arises, for what purpose, under the circumstances, were they permitted to be given to the jury? They were not made at a time when he (the alleged agent) was engaged in the transaction of any business for appellant to which they related. Upon no view of the case can they be said to be anything more than the mere admissions or declarations of Decker, and they can only be regarded as are the hearsay declarations of a third person. That they were wholly incompetent is beyond successful controversy. See

*Rowell* v. *Klein* (1873), 44 Ind. 290, 15 Am. Rep. 235;
*La Rose* v. *Logansport Nat. Bank* (1885), 102 Ind. 332,
and cases there cited; Gillett, Indirect and Collat. Ev., §35.

As shown, the agency of Decker was denied by appellant,
and sharply contested under the evidence. What effect,
under the circumstances, this evidence may have had on the
jury in deciding the contested issue of agency we are not
able to determine. In reason, it certainly can not be as-
serted that the evidence in question was harmless.

2. Complaint is made by appellant because the court, in
instruction number three, fully incorporated therein the
third paragraph of the complaint. In so doing, however,
it may be said the court committed no error, for, in con-
templation of law, the pleadings in a cause are always
before the jury. *Clouser* v. *Ruckman* (1885), 104 Ind.
538.

Of course it is the duty of the court to instruct the jury
in respect to the issues to be tried and determined by them;
and while it is not error to incorporate pleadings in the
court's charge, nevertheless, in a case where they are volu-
minous, it is the better practice, and one to be commended,
for the court to advise or instruct the jury as to the sub-
stance of the issues in the case.

Other questions relative to giving instructions and rul-
ings upon the evidence by the trial court are raised and
discussed by appellant's counsel, but we pass these without
consideration, as they may not necessarily arise upon an-
other trial.

For the error of the court in admitting in evidence the
declarations in question, the judgment is reversed and the
cause remanded, with instructions to the lower court to
grant appellant a new trial.