[Civil No. 2542. Filed December 31, 1926.]

[251 Pac. 891.]

R. A. WELKER, Appellant, v. SAM MISHKIN, Appellee.

Mr. E. L. Spriggs, for Appellant.

Messrs. Senner & Snell, for Appellee.

McALISTER, C. J.—This is an action by Sam Mishkin against R. A. Welker for possession of an automobile, or its value, in case delivery cannot be had. The complaint, in substance, is that on March 30, 1925, the defendant purchased from W. F. Scholl, an automobile dealer of Globe, Arizona, a five-passenger Nash touring car, 1925 model, for $1,788; that he paid $588 at the time of sale, and executed a conditional sales contract for the balance of $1,200, payable in twelve equal monthly installments; that this contract was assigned to the plaintiff the day it was executed for a consideration of $1,200, which he paid. That there was due on said contract at the time suit was filed $1,154.30; and that defendant, though often requested to pay the same, has wholly refused to do so.

Following a general denial, the substance of the answer is: That on January 6, 1925, the defendant, Welker, purchased from W. F. Scholl a five-passenger Nash touring car, and executed a conditional sales

contract for a portion of the purchase price thereof. That by the terms of the contract the car was guaranteed to be in every way satisfactory, but that it did not run as represented, so Scholl agreed in writing on February 27th thereafter to exchange it for a new one of the same character and price. That on March 30, 1925, defendant delivered to said Scholl the car described in the contract of January 6th, and received in exchange therefor the one described in the contract of March 30th, and referred to in plaintiff's complaint. That before the exchange was made, however, Scholl told defendant that it would be necessary for him to execute a conditional sales contract to cover the car received by him in exchange, but that the making of said contract would take the place of, cancel and discharge the contract dated January 6, 1925, and defendant, believing and relying upon these statements and representations, executed said contract of March 30th. That, after executing said last-mentioned contract, Scholl further advised him that it would be necessary for him to pay the carrying charges, insurance, and other incidental expenses connected therewith, but, not wanting to do this, he then paid W. F. Scholl $1,077.46, the full amount due on the car described in plaintiff's complaint, and under both of said contracts, whereupon W. F. Scholl, executed and delivered to him the following receipt:

"It is hereby agreed and understood that Mr. R. A. Welker has paid in full for one 5-passenger Nash Touring advanced model 161 year 1925, and that, in order to make an exchange of cars as agreed between Mr. R. A. Welker and W. F. Scholl, Nash dealer, Mr. R. A. Welker has transferred his original contract to W. F. Scholl, and has signed a new contract in the name of R. A. Welker. W. F. Scholl agrees to make payments as due on both contracts, and to give to R. A. Welker a clear bill of sale to his car when both contracts have been paid.

"W. F. SCHOLL."

That the contract of March 30, 1925, had not to defendant's knowledge been assigned to plaintiff at the time of this payment, but, if it had been, defendant had neither actual nor constructive knowledge of it. That defendant fully believed that W. F. Scholl was the owner and holder of said contract, and entitled to receive the amount due thereon when he made the payment. That all of the aforesaid facts were within the knowledge of plaintiff when the contract was assigned to him; that the contract set out and referred to in plaintiff's complaint is wholly without consideration and, therefore, void and of no force or effect.

To this answer the plaintiff filed a general denial, and replied further, declining to admit that defendant had paid and satisfied the terms and conditions of the contract of March 30, 1925, on that day, or at all prior to the assignment of the contract to plaintiff, and alleging that, if such payment and satisfaction had been made by him with said W. F. Scholl as alleged, it was in fraud of this plaintiff, and for the purpose of defeating his rights thereunder; that prior to and at the time of said assignment defendant represented to the plaintiff as follows: That said contract was valid and in full force and effect; that no part thereof had been paid, discharged, or satisfied; that W. F. Scholl was the absolute owner thereof; that defendant had made such contract with said W. F. Scholl knowing it would be assigned to the plaintiff for a valuable consideration; and that plaintiff would rely upon defendant for the performance of its conditions and terms. It is further alleged that the contract was not paid prior to defendant's receiving notice of such assignment and that the representations and acts of defendant were such as to estop him from setting up against plaintiff the matters contained in his answer.

The testimony in support of these allegations discloses no dispute as to these facts: That the defendant purchased a car from W. F. Scholl on January 6, 1925, but it did not behave as it should, and Scholl agreed in writing on February 27th thereafter to give him a new one in exchange for it; that pursuant to this agreement he stopped at Globe on his way home from Phoenix on March 30th following to make the exchange and Scholl, who, according to his testimony, owed $1,200 on the car he was letting defendant have in exchange, but which he could not deliver until the unloading contract had been cleaned up, told him that it would be necessary for him to sign a conditional sales contract before the exchange could be consummated; that defendant agreed to this, and thereupon he and Scholl went to Mishkin's office where the contract was executed, and, according to Mishkin's version of the transaction, immediately thereafter assigned to him, for a consideration of $1,200, which he then paid Scholl, though defendant denies any knowledge of the assignment until April 1st, when he received notice of it in Safford through the mail; that Mishkin was also the assignee of the contract of January 6th, and while in his office on March 30th defendant gave him his check on the Bank of Safford for $1,077.46, the amount due on this contract; that he and Scholl then went over to the office of the latter, who signed and delivered to defendant the receipt referred to in the answer.

The testimony as to the other material facts is decidedly conflicting. Plaintiff testifies that the check defendant gave him was in payment of the amount due on the contract of January 6, 1925, and that, after this obligation was satisfied, the contract of March 30th was drawn up, executed and assigned, and the consideration therefor paid Scholl by him; that he did not know at that time that the automobile

described in the contract of that date was in lieu of the one referred to in the contract of January 6th, or that defendant had already paid and satisfied everything he owed thereunder.

The defendant, upon the other hand, testifies that the check for $1,077.46 was in payment of what he owed on both contracts; that he delivered it after he had executed the contract of that date; that he bought but one car, and merely exchanged it for a second one of the same model; and that plaintiff knew at the time of the assignment he had purchased only one car; that the contract of March 30th canceled the one of January 6th, and took its place; and that he had then paid and satisfied everything he owed thereunder. He states further that Scholl was to carry the second contract, and that he was not to receive a bill of sale for his second car until that contract had been entirely paid off by him.

W. F. Scholl testified that defendant gave Mishkin the $1,077.46 after the contract of that date had been executed, though he could not say just when it was assigned, but supposed immediately after its execution; that, just prior to the assignment plaintiff, defendant and he had gone over the whole transaction to get an understanding of the entire situation and the purpose of cleaning up the deal in this way; that the $1,077.46 was given to satisfy the contract of January 6th, but it paid all defendant owed on his car; that there was $500 due about this time on the first contract, and he thought this much of the $1,077.46 was in payment of that installment, and that he should continue to pay the other monthly payments on that contract, and that the difference between the $1,077.46 and the $500 would be written in the second contract, and he would pay both of them, but this was not done; that in the receipt he gave defendant on March 30th after the contract of that

date had been executed he agreed to make the payments on both contracts, but that the one defendant signed to make the exchange of cars possible had not been paid to Mishkin.

Upon this testimony the jury returned a verdict in favor of the plaintiff for the amount asked for, and the defendant, his motion for a new trial being overruled, brought the case here for review. He assigns several errors, the first one charging that the court erred in refusing to admit in evidence a writing signed by Scholl and delivered to appellant on February 27, 1925, which, after stating that he agreed to exchange the car purchased by Welker for a new one of the same model, and that the equipment, glass inclosure and tires and tubes then on appellant's car, were to be placed on the new car, closed with this sentence:

"It is also understood that the contract is not to be transferred until reasonable length of time has passed to make a sale of car received from Mr. Welker."

The purpose of this offer was to show that the parties intended that the contract should not be assigned, and thus aid in establishing the main defense, namely, that appellant had paid W. F. Scholl the amount due under the contract after its execution, but before it was assigned, or at least before he had notice of the assignment, and that appellee had knowledge of this when he purchased it and paid the consideration therefor. The contract itself, however, was executed a month later than this writing, and it specifically provides that it may be assigned by Scholl; hence, to have admitted the writing, even if it would have had the effect intended, would have violated, not only the rule prohibiting the introduction of extrinsic evidence varying or contradicting the terms of a written contract (10 R. C. L. 1016, 1017),

but as well the fundamental proposition that an agreement reduced to writing, whether the law requires it to be so written or not, "supersedes all other negotiations and stipulations concerning the matter made at the time or prior thereto." *Dollar* v. *International Banking Corp.*, 13 Cal. App. 331, 109 Pac. 499.

An application of this principle disposes of the second assignment, which is based upon rulings sustaining appellee's objections to certain questions propounded to appellee, Scholl, and appellant himself, the purpose of which was, appellant states, to elicit facts in support of his defense. It would serve no useful purpose to enumerate these questions, but it is sufficient to say that they were either leading or referred to oral negotiations or agreements which were prior to, or contemporaneous with, the execution of the contract itself, and therefore necessarily merged in, or superseded by, that instrument. Out of the abundance of authority on this proposition, an excerpt from the case of *Glendale Woolen Co.* v. *Protection Ins. Co.*, 21 Conn. 19, 54 Am. Dec. 309, which deals with prior or contemporaneous oral negotiations or agreements, and clearly states the rule relating thereto, may be quoted:

"The execution of a contract is deemed to supersede all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument and any representation made prior to or contemporaneous with the execution of the written contract is held to be inadmissible to contradict, change or add to the terms plainly incorporated into and made a part of the written contract."

The third assignment is that the "court erred in giving certain instructions to the jury," but it does not appear in connection therewith what these instructions are, or wherein the court committed error, and, if an attempt be made to supplement the assign-

ment by turning to the argument, something, however, the law does not require (*Wootan* v. *Roten,* 19 Ariz. 235, 168 Pac. 640), it will be ascertained that the first and fourth instructions are there designated as erroneous upon the ground that they "are wholly unwarranted, and are in no way justified under the evidence adduced." The court is still in the dark as to appellant's meaning, for this language does not point out the particularity of their transgression. An objection so general in its terms, though the court were supposed to consider it in aid of the assignment, is too broad to be of service in accomplishing this end. It is almost, if not quite, as indefinite as the expressions, "the judgment is contrary to the law," "the evidence is insufficient to support the judgment," "the court erred in its findings of fact," and others of a similar nature, which have all been declared by this court as failing to present for review any ruling of the trial court. *Wootan* v. *Roten, supra; County of Pinal* v. *Heiner,* 24 Ariz. 346, 209 Pac. 714, and cases there cited. It is not contended that these instructions do not correctly state the law, or that they involve fundamental error; hence no discussion of them is required.

The third instruction against which complaint is made is composed of two paragraphs, and the objection to the first one, which likewise appears only in the argument, is practically the same as the one just mentioned, and therefore calls for no consideration.

An examination of the second paragraph of this instruction discloses that the court used the following language in speaking of it:

"This amended answer is rather long; yet, summed up in a few words, the plea is that the contract was paid off. Now, then, the plaintiff comes back with a reply. I am going to read most of this reply, be-

cause it is essential that you have most of this in mind.''

The court then read the reply, which related entirely to the issue of payment, and appellant contends that this language of the court, coupled with the fact that the reply, which was quite lengthy, was read in full, amounts to an abrogation of the answer, and a magnification of the reply, instead of a proper statement of the issues, and therefore constitutes a comment on the evidence which demands a reversal of the judgment. It is not apparent how this could be true, for it will be observed, from the substance of the reply given above, that it contains as brief and accurate a statement of appellee's side of the issue of payment as could well have been made, and that by following the method it did the contentions of the respective parties thereon were clearly and fairly placed before the jury. "When the pleadings contain a plain statement of the matter in controversy," says the court in *Crawford* v. *Nolan,* 72 Iowa 673, 34 N. W. 754, "the court ought not to be required to use other language in stating the issues." *Vandalia Coal Co.* v. *Moore,* 69 Ind. App. 311, 121 N. E. 685. It is perhaps better practice for the court to state the issues in its own language, since it might be better understood by the jury than legal phraseology, but it is not error to incorporate the pleadings or a part thereof in the court's charge when they clearly present the issues involved. *Blair-Baker Horse Co.* v. *First Nat. Bank,* 164 Ind. 77, 72 N. E. 1027. And the mere fact that the reply was much longer than the statement in which the court summed up the allegations of the answer does not indicate that undue stress was laid upon the evidence of appellee. Such is the holding in *Macon, D. & S. R. Co.* v. *Joyner,* 129 Ga. 683, 59 S. E. 902, which contains this language:

"If the plaintiff's case requires a full, definite, and affirmative allegation of certain facts, and the defense to the cause of action as stated rests upon a mere denial of the allegations in the petition, and the trial judge sums up the contentions of both parties by a fair statement of the material allegations in the petition, and then states that these allegations are denied by the defendant, how can it be said that he has failed to state the contentions of either party?"

The last assignment challenges the sufficiency of the evidence to support the judgment. As heretofore stated, it discloses no dispute as to most of the facts of the case, though there is a conflict upon the only real issue involved; that is, payment which is asserted in the answer and denied in the reply. It is not questioned that on March 30, 1925, appellant, in order to make an exchange of cars possible, signed a conditional sales contract, in which he agreed to pay W. F. Scholl $1,200 of the purchase price of a car, and that this contract was thereafter assigned by Scholl to appellee, who paid him a consideration of $1,200 therefor. Neither is there any dispute as to the fact that at some stage of the deal consummated that day appellant gave appellee his check for $1,077.46, and that this was the amount then due on the contract of January 6th which appellee also held by assignment. The evidence is conflicting, however, as to whether the $1,077.46 was paid after the execution, but before the assignment of the contract of March 30th, or at least before appellant had notice thereof, and was in satisfaction of the amount due on both contracts, as testified to by appellant, or whether it was paid before this contract was even executed, and was merely in satisfaction of the balance due on the contract of January 6th, as testified to by appellee. If, as the court in effect told the jury, the former were true, its pay-

ment discharged the contract and entitled appellant to a verdict; but, if the latter were correct, the contract was not satisfied, and appellee should have had the decision.

In accepting appellee's version of the transaction, the jury evidently believed that appellant signed the contract of March 30th to aid Scholl in obtaining from appellee, through its assignment, $1,200 to pay the railroad company what he owed on the car he was letting appellant have in exchange, and that, even though Scholl promised him he would pay the contract, and appellee knew of this promise, such knowledge did not release appellant from his obligation thereunder, and there is nothing in the evidence showing such release either expressly or impliedly, or appellee's acceptance of Scholl for the debt. The money was advanced upon the security of appellant's contract, and this placed him very much in the situation of a surety on a note. The jury evidently took this view, and, since there is evidence to support its finding, this court is powerless to interfere. It is unfortunate for appellant that, in addition to paying for his car, he should be compelled to discharge the contract executed to make possible its exchange, but he evidently signed it upon Scholl's promise to pay it, and in doing so ran the risk of his failing to make good.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.