KEESHIN MOTOR EXPRESS COMPANY, INC., ET AL. *v.* GLASSMAN

[No. 27,628. Filed January 21, 1942. Rehearing denied March 2, 1942.]

*Frederick H. Krueger, Walter C. Williams* and *Neville V. Williams,* all of Michigan City, and *Oscar B. Smith,* of Knox, for appellants.

*Robert H. Moore,* of Gary, *James P. Gleason,* of Michigan City, and *Orville W. Nichols,* of Knox, for appellee.

RICHMAN, J.—Appellee Lloyd Glassman, a minor, recovered judgment on a verdict for $4,000 for personal injuries sustained when a Ford coupe with rumble seat in which he was riding collided with appellants' truck on U. S. Highway 35 (also called Yellow River Road) where it was intersected by Johnson Road in the open country northwest of LaPorte, Indiana. The court overruled appellants' motion for a new trial which asserted, beside other alleged errors some of which are hereafter noticed, that certain instructions were erroneously given. Error is assigned on this ruling. Appellee says

that neither the evidence nor the instructions are in the record.

Typewritten transcript stating that it "contains all the evidence given in said cause, with the objections thereto, rulings of the Court on such objections, and the exceptions to such rulings" was tendered to and signed by the judge within the time limited. Over his signature is the statement: "The Court having examined the foregoing bill of exceptions containing the evidence, hereby approves the same, and orders said bill to be filed of record." Then follows a certificate of the clerk that appellants "filed in my office, as such clerk, the above and foregoing original longhand manuscript of the evidence given in said cause, as taken down and certified by Don N. Laramore, Official Reporter of said Court. Witness my hand and the seal of said court this 5th day of April, 1939. Said transcript was filed after the same was signed by the court. Fred R. Hinz, Clerk Starke Circuit Court."

This was a sufficient compliance with § 2-3111, Burns' 1933, § 456, Baldwin's 1934. The signature of the judge made of the reporter's transcript a bill of exceptions. That the clerk in his certificate called it the reporter's "longhand manuscript" does not destroy its status. If it had lacked the judge's signature it would not have been a bill of exceptions even though so designated by the clerk.

The record shows an order book entry reading: "All instructions given by the court of its own motion and all instructions tendered by both the plaintiff and defendants are now ordered filed and made a part of the record, which is now done, to-wit:" then immediately follows transcript of the instructions. Appellee, citing *Board, etc.* v. *Gibson* (1902), 158 Ind. 471, 63 N. E. 982, and 2 Watson's Works Practice,

§ 1811, says that the entry was not sufficient for lack of "a motion by one of the parties for an order of court making instructions part of the record." The case cited did not go on that ground and the textbook citation was applicable to a former statute and not to § 2-2010, Burns' 1933, § 343, Baldwin's 1934, which was in force when this cause was tried. The instructions are in the record.

In this connection it appears that after the trial and before the appeal, the instructions tendered by appellants, without fault of either party, were lost by the clerk. Appellants' office copies not being available, the court by order substituted copies of copies obtained from appellee. Appellants assert that this is ground for a new trial, with which we cannot agree. Appellants complain also that the substituted instructions are not true but they do not point out the alleged inaccuracies. The trial judge necessarily had to read all of the tendered instructions in order to determine which should be given. We may assume that he was sufficiently familiar therewith to be satisfied as to the accuracy of the copies. His ruling ought not be disturbed.

The negligence charged in the complaint was that while the coupe "was upon the intersection" of the two highways the driver "did carelessly and negligently drive said truck at a high and dangerous rate of speed, towit: Forty-five (45) miles per hour, and did carelessly and negligently drive said truck around the curve of the said Yellow River Road south of the curve of aforesaid intersection and in a northerly direction on said Yellow River Road at aforesaid high and dangerous rate of speed and out and upon the intersection which automobile in which plaintiff was riding as aforesaid: that said defendant did carelessly and negligently drive

said truck out upon said intersection without giving any warning sign of its approach, without sounding any horn and did there and then carelessly and negligently fail to slacken the speed of said truck as it approached aforesaid intersection, but did carelessly without sounding any horn or giving any warning whatsoever of its approach carelessly and negligently drive said truck on said intersection at the high and dangerous rate of speed aforesaid over and upon the automobile in which" appellee was riding.

The sufficiency of the complaint was not challenged. When the accident occurred it was not negligence *per se* to drive on a preferential highway in the country at the rate of 45 miles per hour nor, where the driver's view was unobstructed, was it negligence *per se* to fail to sound a horn to warn the occupants of a car approaching from the left. Section 47-513, Burns' 1940 Replacement, § 11166, Baldwin's 1934, is not applicable. So the negligence, if any, in this case under the theory of the complaint must be predicated upon the failure of the truck driver to exercise due care after the coupe had entered the intersection and collision was imminent.

This briefly is the factual situation. Appellants' truck was proceeding northward on a straight concrete highway which the jury found was preferential. Five boys, including a sixteen year old driver, in a Ford coupe with rumble seat which he owned were going to a county fair, in the daytime, and entered this highway from the west. The drivers had uninterrupted view of each other's vehicles, as the jury in substance found in answer to an interrogatory. The boys were either inattentive or misjudging the speed of the truck thought they could beat it across the intersection. The truck driver was either inattentive or assumed that the other

car would not enter and did not have his truck under such control that he could avoid the collision after he saw the coupe enter the intersection. Their versions of what actually occurred were conflicting. For instance, testimony as to the speed of the truck varied from twenty to sixty miles per hour. It weighed with load 20,000 pounds and stopped within thirty feet of the place of impact which is not consistent with a speed of sixty miles per hour.

The ultimate issues were of course the negligence of the truck driver and freedom from contributory negligence of appellee who was riding in the left side of the rumble seat. But these issues were necessarily connected with and no doubt confused by the fact that the conduct of appellee's brother, who was driving the coupe, was such as would have justified the jury in finding that he was negligent and that his negligence was the sole proximate cause of the collision.

With this situation it was incumbent upon the trial court in its instructions to clarify the issues without giving any of them undue prominence. This was not done. The instructions as a whole are lengthy, intricate, repetitious, argumentative and confusing. They tend, to appellants' disadvantage, by needless repetition to draw the jury's consideration away from the conduct of appellee's brother and to lead the jury to believe that, in the court's opinion, what he did or failed to do was of little consequence.

While appellants rely on error in giving each of fourteen instructions, the specific reasons assigned for the most part are either captious or entirely inapplicable and they entirely overlook valid objection to at least one erroneous instruction although it is criticized on other grounds. But they sufficiently assign as error that six

of the instructions by repetition unduly emphasize the fact that to appellee may not be imputed the negligence of his brother. We are of the opinion that this error, coupled with error in giving the sixteenth, which is one of the six instructions on imputed negligence, requires that the judgment be reversed.

We are not unmindful of the desirability of brief opinions but we believe that our holding in this case cannot be made clear without a review of all the instructions and quotation of the six above mentioned. In view of the necessity for a new trial, in such review we shall notice defects that may be avoided when another jury is instructed.

By instruction No. 1 the court read to the jury the entire complaint including the caption thereof and the prayer for $20,000 damages. This was not error but the practice is not to be commended. *Blair-Baker Horse Co.* v. *First Nat. Bank* (1905), 164 Ind. 77, 84, 72 N. E. 1027. The second instruction quoted the "next friend" statute and with unnecessary elaboration explained why the action was brought by a next friend. No. 3 stated that the burden was on the appellee to prove the material allegations of the complaint, that is, that the collision was caused by the negligence of appellants in operating their truck. There is no mention of the specific charges of negligence in the complaint, nor any attempt to confine the jury to those charges. Only in the most general terms is the issue of negligence presented. No. 4 defines "preponderance," No. 5, contributory negligence, No. 6, the jury's function in determining the weight of the evidence. No. 7 defines negligence and, for the second time, contributory negligence and properly places the burden of proof. No. 8 states the statutory rule with respect to driving at speed greater than is reasonable and applies

it to the conduct of appellants' driver. No. 9 uses considerable of the language on pages 666 and 667 of the opinion in *Kraning* v. *Bloxson, Admx.* (1937), 103 Ind. App. 660, 5 N. E. (2d) 649, 9 N. E. (2d) 107, where the facts were not all similar to those here, and without application submits such language to the jury as an abstract statement. In at least one, but perhaps minor, respect the instruction contains an assumption of fact not within the evidence. No. 10 states that negligence is want of due care, further defining this term, and concludes with the statement that one question for the jury to determine is whether defendant used due care. No. 11 properly states the duty of a driver approaching a public highway intersection.

The instructions on imputed negligence claimed to be repetitious are as follows:

No. 12. "The court instructs you that a passenger in an automobile, who exercises no control or management over the automobile, is required to use that degree of care that an ordinarily prudent person in like circumstances would use under the same or similar conditions. The negligence of the driver of such automobile is not imputed to the passenger and the negligence of the driver of an automobile in which a guest is riding is no excuse or defense for the negligence of a third person."

No. 13. "The court instructs you if you find from a fair preponderance of the evidence in the present case that the driver of the defendant's truck was guilty of any of the acts of negligence alleged in plaintiff's complaint and that as the proximate result thereof, plaintiff was injured, the fact that the driver of the car in which plaintiff was riding was negligent, if you find from the evidence that such driver was negligent, and that such negligence also contributed to plaintiff's injury, would be no defense for the defendant company's negligence and would not prevent a recovery by plaintiff if you further find that plaintiff himself exercised no management or control over said

automobile and was free from negligence that proximately contributed to his injury."

No. 15. "If you find from the evidence in this case that the driver of the automobile in which plaintiff was riding was guilty of some negligence in the operation of such automobile, the court instructs you that you must not impute such negligence of the driver of said automobile to the plaintiff."

No. 16. "The court instructs you, in this case, that the negligence of the driver of the automobile in which plaintiff was riding, if you find that such driver was negligent, cannot be imputed to the plaintiff. You are therefore instructed that if you find and believe from the evidence that the driver of said automobile was guilty of negligence which contributed to plaintiff's injury, if any, yet if you further find and believe from the evidence that the defendant's agent and servant in charge of the truck mentioned in the evidence was also guilty of negligence, as specified and defined in these instructions and alleged in plaintiff's complaint, and if you further find and believe from the evidence that the injury to plaintiff, if any, was caused by the combined and concurring negligence of the driver of said automobile and the negligence of defendant's agent and servant, as defined and specified in these instructions and as alleged in the plaintiff's complaint, if you find from a fair preponderance of the evidence that such agent and servant was negligent, as defined and specified by these instructions and alleged in plaintiff's complaint, and such negligence proximately contributed to plaintiff's injury, then your verdict should be for the plaintiff. 274 S. W. 939."

No. 17. "The court instructs you if you believe from the evidence that the plaintiff was riding in an automobile driven by his brother, who was the owner of such automobile and over which plaintiff neither assumed nor exercised any control and over which he had no control, and he was injured without negligence on his part; even though you may believe that the brother who was driving the car at the time was guilty of contributory negligence so as to prevent him from recovering damages for

any injuries he may have sustained, this does not affect the plaintiff's right to recover in this case, as the negligence of the brother, if any, cannot as a matter of law be imputed to the plaintiff. 136 S. E. 660."

No. 18. "Under the law of the State of Indiana the negligence of the driver of an automobile cannot be imputed to a guest or passenger riding in such automobile, even though such driver may be a close relative of such guest. And so in this case, if you find from the evidence that the plaintiff, Lloyd Glassman, was riding as a guest or passenger in an automobile driven by his brother, Earl Glassman, and that he received injuries substantially as described in the complaint as a proximate result of one or more of the acts of negligence of the defendants complained of, without fault on his part, then your verdict must be for the plaintiff, even though some one or more acts of negligence on the part of such brother, Earl Glassman, may have contributed thereto."

The fourteenth instruction, which was sandwiched between the instructions on imputed negligence, is the same as that set out in full in the opinion in *Ohio Electric Co.* v. *Evans* (1922), 77 Ind. App. 669, 675, 134 N. E. 519, wherein the court (the writer of the opinion dissenting) held that its giving was not reversible error. It presents in argumentative form reasons why inaction on the part of a passenger may not be negligence. There is more ground for condemning it here than in that case. No. 19 was an incorrect instruction, but favorable to appellants, on the right of way of vehicles approaching a highway intersection. No. 20 informed the jury that if the truck reached the intersection first and was being operated in a prudent and lawful manner defendants were not negligent, which obviously is a truism. No. 21 said that if the failure of appellee to look was the proximate cause of the injuries he could not recover. No. 22

denied recovery to appellee if his brother's negligence was the sole proximate cause of the injury. No. 23 applied to the driver of the coupe the same general rule as was applied in No. 8 to the driver of the truck. No. 24 was an involved instruction attempting to apply the rule that a passenger in a car is under a duty to exercise care to observe an approaching vehicle and to warn the driver. It concludes with the following confusing statement:

> "and if you further find by a fair preponderance of the evidence that the failure of plaintiff to look if he could have seen the truck with the exercise of ordinary care and that such failure to look or to see was the immediate and sole proximate cause of the collision, then plaintiff was negligent and by his silence and failure to warn the driver of the car in which he was riding contributed to his own injury, he cannot recover, even though you find that defendants were negligent in the operation of their truck."

This instruction is identical with one tendered by appellants. While they may not complain of its giving, it ought to be avoided in another trial. No. 25 again charges that appellee cannot recover if the negligence of the driver of the coupe was the sole proximate cause of the injury. No. 26 declares that under circumstances detailed in the instruction the truck driver had a right to presume that the other driver would stop before entering the intersection. No. 27 without attempt at application is a copy of a statute prescribing the method by which preferential highways may be established, the last clause reading, "such board of commissioners or township trustee is hereby prohibited from interfering with the erection of such signs or removing same." There can be no excuse for dragging into instructions in a negligence case any such abstract unexplained quotation from a statute. No. 28 is a fair

statement of the measure of damages but No. 29 repeats substantially everything that is in No. 28 and adds the more or less speculative possibility of damage "by loss of time or lack of employment" or necessity of taking "an inferior position than that which he might have otherwise taken" after he should arrive at the age of 21 years. He was 14 at the time of the accident in which he lost four teeth and suffered a brain concussion. There was conflicting opinion evidence as to whether he had any permanent injury other than the loss of the teeth. Obviously there could be no evidence other than opinion as to the possibility of his not getting as good a job after he became 21 as he would have been able to obtain had he not been injured. Loss of time seven years later was speculative also and considerably at variance with his history between the dates of the accident and trial when he had missed school only five days in a school year. The last two instructions give directions as to the answering of interrogatories and preparation of the general verdict.

Considering now the quoted instructions, as an abstract statement of law No. 12 is correct. It is not applied to the specific facts. No. 13 attempts such application but leaves to the jury the determination of the question whether appellee exercised management or control over the coupe in which he was riding. No. 15 took that question from the jury, and properly, because there was no evidence from which such management or control could reasonably be inferred. No. 16· repeats the substance of everything that was said in No. 15 and elaborates in repetitious language the content of No. 13. Other objections to it are hereinafter discussed. No. 17 resubmits to the jury for its determination the question of appellee's control over the automobile and says that in the absence thereof'

the driver brother's negligence "cannot as a matter of law be imputed" to appellee. No. 18 emphasizes, by reference to family relationship, what the court had already said in No. 17 and nothing more.

While there was some repetition on every issue including damages, it is apparent that the question most ,stressed was that the brother's negligence could not be imputed to appellee. This was wholly unnecessary as everything essential in the six instructions could have been included in one and it need not have been very long.

While this court has long recognized the well known principle that frequent and unnecessary repetition of correct statements of law in instructions may be reversible error, it has been reluctant to reverse a judgment solely on that ground. Application of the principle is made difficult in that the error is not *prima facie* prejudicial, as where an instruction incorrectly states the law, but becomes prejudicial by the *quantum* of the repetition and the relative importance of the issue emphasized. In any set of instructions there is apt to be some reiteration of the applicable rules of law. The number of times an instruction is repeated is not the criterion. Rather is it the probable effect which that repetition will have upon the jury's proper consideration of the evidence. We would invite many unnecessary appeals if we did not make it clear that only in exceptional cases, and particularly where from the whole record we cannot fairly say that a correct result was reached, will we attempt to apply the principle.

We have found only one Indiana case reversing a judgment for repetitious instructions, *Fowler* v. *Wallace* (1892), 131 Ind. 347, 31 N. E. 53. The only authority cited in the opinion is *Powell* v. *Messer*

(1857), 18 Tex. 401, from which there is this quotation (p. 350) :

> " 'Where the judge has embodied in his charge rules of law applicable to the case, in such form and connection as to give to each no more than its due relative prominence, to repeat portions of the charge in the form of distinct and independent propositions; may not unfrequently have the effect to give to the principles thus enunciated an undue prominence and importance in the minds of the jury, and thus to mislead them in the application of the law to the evidence. It is the manifest duty of the court to guard against such a consequence.' "

Judge Elliott adds (p. 351) :

> "It is probably true that there are cases where the rule stated should not apply, but the case before us is a close one upon the evidence, and we are unable to escape the conclusion that the trial court by so often repeating the doctrine so broadly and strongly stated imposed a greater burden upon the appellant than the law requires him to bear."

The rule stated has consistently been followed in Texas, has been recognized in numerous Illinois cases and has been made the ground of reversal in several cases in other jurisdictions.

In the following cases repetition of instructions was the sole ground of reversal. *Risinger* v. *Sullivan* (1913), Texas Civil Appeals, 161 S. W. 397; *Sizemore* v. *St. Louis & S. F. Ry. Co.* (1910), Texas Civil Appeals, 130 S. W. 1024; *Redmond* v. *Sherman Cotton Mills* (1907), Texas Civil Appeals, 100 S. W. 186; *Buchel* v. *Williams* (1935), 273 Mich. 132, 262 N. W. 759; *Mendes* v. *Kyle* (1882), 16 Nev. 369. There were additional errors in the following cases but each of the opinions put the decision on all errors including the repetition of instructions. *R. A. Watson Orchards, Inc.* v. *New York, C. & St. L. R. Co.* (1928), 250 Ill. App. 22, 52; *Wood* v. *Illi-*

*nois Central R. Co.* (1914), 185 Ill. App. 180, 184; *Bacon* v. *Walsh* (1913), 184 Ill. App. 377; *Rice* v. *Jefferson City Bridge & Transit Co.* (1919), Mo., 216 S. W. 746, 753; *Missouri, K. & T. Ry. Co. of Texas* v. *Brown* (1912), Texas Civil Appeals, 147 S. W. 1177, 1179; *Dye* v. *Chicago, R. I. & G. Ry.* (1910), Texas Civil Appeals, 127 S. W. 893; *Hoskovec* v. *Omaha Street R. Co.* (1908), 80 Neb. 784, 115 N. W. 312. In numerous cases, of which *Chicago, Milwaukee, etc. Ry.* v. *Alexander* (1907), 47 Wash. 131, 91 P. 626, is a fair example, the court, after stating that the judgment must be reversed for other error, has pointed to repetitious instructions and said they should not be given in the new trial ordered. And innumerable cases have held instructions properly refused because they repeated charges already given and would tend unduly to emphasize the issue covered thereby.

The case of *Fowler* v. *Wallace, supra,* seems never to have been cited on this point in Indiana but the principle was again stated in *Miller* v. *Coulter* (1901), 156 Ind. 290, 298, 59 N. E. 853, from which we quote as follows:

> "But, even if the instruction transgressed the rule against needless repetitions in a charge, such fault, however censurable in some cases, would not, in this instance, amount to reversible error, although in a more aggravated form, and under some circumstances, it might have that effect."

Since then this court on several occasions has condemned the giving of repetitious instructions as "bad practice" but has not seen fit to reverse on that ground alone. See *Robbins, Exr.* v. *Fugit* (1920), 189 Ind. 165, 168, 126 N. E. 321; *Modern Woodmen, etc.* v. *Kincheloe* (1911), 175 Ind. 563, 94 N. E. 228, Ann. Cas. 1913C, 1259n. In *Davis, Exr.* v. *Babb* (1921), 190 Ind. 173, 188, 191, 125 N. E. 403, the court said that repeti-

tion five times of a correct instruction on testamentary capacity was harmless error. It may be observed, however, that the opinion concluded with the statement: "The case seems to have been fairly tried, and a correct result reached." We cannot make the same comment on the record before us.

In most of the cases where there was reversal because of repetition, the over-emphasis was followed by a verdict to which the repetition was traceable. For instance, where several instructions concluded with the phrase "your verdict should be for defendant," that was the verdict. Where the burden on a party was stressed by repetition, the verdict was against him. In this case we do not have that sort of emphasis. The tendency of these six instructions is not to add to the burden of either party but, by repeating that the jury may or must not impute to appellee his brother's negligence, to draw their attention away from the fact that such negligence under the evidence may well be deemed to be the sole proximate cause of the collision. They might not have found against the defendant if they had not been so instructed.

Added to this error, which we think was prejudicial, there is an erroneous statement of law in the sixteenth instruction. It was mandatory in form and omitted altogether the essential fact that appellee must be free from contributory negligence to entitle him to a verdict. To give such an instruction is prejudicial error. *Princeton Coal Co.* v. *Dowdle* (1924), 194 Ind. 262, 272, 142 N. E. 419; *Indianapolis Traction, etc., Co.* v. *Mathews* (1912), 177 Ind. 88, 105, 97 N. E. 320; *Covert* v. *Boicourt, Exr.* (1931), 93 Ind. App. 355, 364, 168 N. E. 198. We cannot say that it was harmless on the ground that there was no evidence of contributory negligence on his part. While he was

not driving, nevertheless he was riding in a place from which he could have seen the approaching truck, just as well or better than the driver of the coupe who was crowded in the seat with two other boys around whom he had to look to the right. If appellee had looked and seen the truck and given a warning to the driver the collision might not have occurred. So far as the evidence discloses he did nothing. This may have been consistent with due care as argued in the fourteenth instruction but a jury also might reasonably have drawn therefrom an inference of contributory negligence. We hold therefore that giving the sixteenth instruction was reversible error.

Anticipating the complaint, which in other cases has come on petition for rehearing, that our opinion and judgment with respect to this error is upon a ground not presented by appellants, we give the same kind of answer as appears in *Big Creek Stone Co.* v. *Seward* (1895), 144 Ind. 205, 209, 42 N. E. 464, 43 N. E. 5, and *Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 328, 363, 82 N. E. 52, 84 N. E. 540.

The errors assigned by appellants brought in question fourteen of the instructions and six in particular. We had to examine them critically to discover whether or not they were repetitious. In that examination we discovered that the sixteenth was not only repetitious but also incurably erroneous. We may not blind ourselves to this fact or its consequences. In the Moore case, *supra*, the court said at p. 364: "Where resort to the record is necessary, the case will be determined by the record, and in such a case the court will not regard itself as governed by the conceptions of counsel on either side as to the nature of the controlling facts."

Here we do not have to go to the record for the error is apparent from the briefs. We add this quotation

from the Seward case, *supra,* at p. 210: "If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court."

The record before us discloses that in the final day of a week devoted to the trial, at the conclusion of several hours of argument and instructions, the jury composed of ten men and two women retired at 4:00 p. m. to deliberate, was in session without rest except upon seats and benches of the court and jury room all night and the next day until about noon when at their request and over the objection of appellants the instructions were again read to them, and that a verdict was finally reached at 4:00 p. m. after twenty-four hours of deliberation. After it had been out twenty-one hours, appellants filed written motion that the jury be discharged, the overruling of which is assigned as error. Without deciding that question, we are satisfied from the record that under the instructions, doubly given, the jury must have been confused and that the verdict reached after so long a deliberation may well have been, as contended by appellants, the result of concessions made not from consideration of the evidence but due to physical exhaustion. Such a verdict should not stand.

The judgment is reversed with instructions to sustain appellants' motion for a new trial.

Roll, J., dissenting.

NOTE.—Reported in 38 N. E. (2d) 847.