ROBERT DAVID KILLION AND BETTE KILLION *v.*
VERA ANN UPDIKE.

[No. 1-274A19. Filed September 26, 1974.].

*A. Thomas Cobb, Elrod & Elrod,* of Indianapolis, *Harlan H. Hinkle, Palmer, Hinkle, Brenton & Keck,* of Danville, for appellants.

*Howard J. DeTrude, Jr., Robert J. Wampler, Kightlinger Young Gray & DeTrude,* of Indianapolis, for appellee.

LOWDERMILK, J.—Plaintiffs-appellants (Killions) initiated this action for breach of contract and for damages and loss of profits. The defendant-appellee (Updike) answered and filed a counterclaim. The court, after hearing evidence, found

that the parties had entered into valid contract, that said contract was removed from the statute of frauds by reason of substantial performance, and further found that neither party should recover from the other as a result of a mutual rescission of the contract.

Killions timely filed their motion to correct errors which was by the court overruled.

Killions operated a telephone answering service out of their residence in Indianapolis. In February of 1970 Mrs. Killion initiated a contact with Vera Updike and asked her if she would like to purchase the business. The parties met and entered into negotiations, in which Updike was informed that the business already had all the equipment necessary to compete. A piece of equipment called a connector identifier which allowed automatic transfers of calls from one exchange to another without a service charge to the customer was discussed. Killions' business had no connector identifier and was thus not as competitive as larger answering services.

The parties had several meetings and a written contract was drawn up but was never executed by and between the parties. The negotiations disclosed that Killions were to provide Updike with a written inventory of merchandise being sold, an affidavit of title for the property transferred, a certified list of creditors, a certified list of customers, and a non-competitive agreement for a period of three years. Updike was also to be permitted to inspect the books of account of the business.

The evidence most favorable to the appellee discloses that Updike was refused permission to inspect the books and was not provided with any of the above named lists or agreements.

Updike took possession of the business in May of 1970 and made all payments to which she had agreed. In March of 1971, Updike advised Killions by letter that for various reasons discussed in said letter, she was terminating the agreement as of May 1, 1971. The letter stated that Updike would continue to operate the business until May 1, 1971.

Upon receipt of the letter Killions took possession of the business and the building housing it on April 5, 1971. Killions removed the employee of Updike who was continuing to operate the business. Thereafter, Killions operated the business at the original location for sixteen and one-half months and subsequently sold the business to another party for the price they had originally asked of Updike.

The first issue raised in this appeal is whether the finding by the trial court that there was a mutual rescission of the contract is contrary to the evidence and contrary to law. Killions contend that their taking over of the property and of the business after receipt of the letter was done only to mitigate their damages under the anticipatory breach stated in the letter. Updike argues that the actions of Killions constituted acquiescence to her offer of rescission of the contract and that such acquiescence constituted action upon which the court correctly found a mutual rescission of the contract.

Mutual rescission of contracts was discussed in the case of *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331, 338, 61 N.E. 726, as follows:

". . . It is not material whether there had been any breach of said contract by appellee or whether appellant had the right to rescind the same on that account, for when a party, even without right, claims to rescind a contract, if the other party agrees to the rescission, *or does not object thereto and permits it to be rescinded,* the rescission is by mutual consent. . . . It is evident that when a contract is rescinded by mutual consent or otherwise, no action can be maintained for a breach thereof. . . ." (Our emphasis.)

In the case of *Gwinne* v. *Ramsey* (1883), 92 Ind. 414, the rule was stated that a contract can be rescinded by the common consent of the parties. The court went on to hold that mutual consent of the parties to a rescission of a contract could be shown by the actions of the parties as conclusive evidence tending to prove an express rescission.

Mutual rescission was an issue in the case of *Church* v. *Bobbs-Merrill Co.* (1959), 272 F.2d 212, 215, where the United States Court of Appeals, Seventh Circuit, stated as follows:

"A contract may be rescinded by mutual agreement found in the acts of the parties and the attending circumstances. Williston on Contracts, Sec. 1826, 1938 ed. It is evident that when a contract is rescinded by mutual consent or otherwise no action can be maintained for a breach thereof. *Ralya* v. *Atkins,* 157 Ind. 331, 61 N.E. 726."

This court was recently presented with the issue of mutual rescission in the case of *Lindenborg* v. *M & L Builders and Brokers, Inc.* (1973), 158 Ind. App. 311, 302 N.E.2d 816, 823, wherein Judge Staton stated as follows:

"The rescission of a contract may be a mutual agreement by the parties to an existing contract to discharge and terminate their rights and duties under it. Corbin on Contracts § 1236 (one vol. ed. 1952). The requisite mutual consent to the rescission of a contract may be evidenced by the acts of the parties as well as by an express agreement. *Gwynne* v. *Ramsey* (1883), 92 Ind. 414; *Church* v. *Bobbs-Merrill Publishing Co.* (S.D. Ind. 1959), 170 F. Supp. 32. Even a party without right may rescind a contract if the other party agrees to that rescission or fails to object thereto and permits the rescission to occur; such a rescission is by mutual consent. *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331, 61 N.E. 726."

It is our opinion that the trial court correctly found that the oral contract in the case at bar was terminated by a mutual rescission of the parties. The evidence conclusively shows that Killions had failed to perform on their part of the contract in several respects, including the failure to allow Updike to examine the books and the failure to provide certain information. The argument propounded by Killions that their taking over the business in April of 1971 was not acquiescence to the offer of rescission but was, rather, a valid attempt to mitigate damages, is untenable. The letter which was sent to Killions by Vera Updike did contain a statement indicating that Updike had vacated the house

and had the intention to rescind the contract. However, the letter further indicated that Updike would make business payments for the period up to and including May 1, 1971. The letter further stated that Updike would continue operation of the business for the benefit of the clients thereof through April 30, 1971. Thus, we do not see that the evidence required any mitigation of damages on April 5, 1971. Although the business may have been operating in a less profitable manner than before the contract, nevertheless the business was being operated under the direction of Updike at the original location and the business had not been abandoned in any manner.

For the above stated reasons it is our opinion that the evidence conclusively supports the decision of the trial court denying recovery as sought by Killions, due to the fact that the Killions made no objection to the offer of rescission by Updike and permitted the rescission to occur by mutual consent.

The second issue presented in this appeal is whether the trial court committed reversible error when it refused to admit into evidence Plaintiffs' Exhibit No. 4, which was a recapitulation of damages allegedly suffered by the Killions. Said exhibit had been prepared by Mr. Killion, who was an accountant. The evidence most favorable to the decision of the trial court discloses that the facts covered in the exhibit had already been put into evidence through testimony and, in fact, some of the testimony had referred to Plaintiffs' Exhibit No. 4.

It is our opinion that it was within the sound discretion of the trial court whether he permitted a written resume of evidence already introduced and we cannot find any abuse of discretion in refusing the admission of Plaintiff's Exhibit No. 4.

The final issue is whether the trial court erred in permitting Updike to answer a question concerning the agreement. Updike had testified that the Killions had informed her that all

equipment necessary to operate the business was included in the agreement. It had been established that Killions knew of the connector identifier and what that equipment could do for the business. Updike further testified that without a connector identifier the business could not be competitive with the larger answering services. Updike was then asked the following question:

"If you had known this effect on the business, would you have considered entering into any agreement with the Killions to acquire?"

After objection by Killions, Updike gave the following answer:

"I certainly would not have entered into this agreement had I known the effect that the equipment would have on the business."

Killions contend that the trial court erred in overruling their objection, based on the fact that Updike was not qualified as an expert and thus could not state an opinion or a conclusion. Killions also argue that the opinion was speculative and conjectural and was not proper. Updike first contends that the question and answer were material to her counterclaim and defense. She further argues that the question did not ask for an opinion but was directed toward a misrepresentation of facts by the Killions relating to the business during negotiations. Finally, Updike argues that even if some error was committed it was harmless. It is our opinion that no error was committed in permitting Updike to answer the question. Her answer was not speculative and merely answered a question which had asked for a fact, that being whether she would have entered into an agreement had she known the effect of the connector identifier. Further, Killions have not shown this court, nor can we find where, they were prejudiced by this question and answer.

Finding no reversible error the decision of the trial court is affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 316 N.E.2d 837.