Mary C. KRANDA, Appellant (Plaintiff Below),

v.

HOUSER–NORBORG MEDICAL CORPORATION and Keim T. Houser, M.D., Appellees (Defendants Below).

No. 3–480A107.

Court of Appeals of Indiana, Fourth District.

May 5, 1981.

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, P. C., Kokomo, Edward A. Zych, Matthews-Petsche & Associates, South Bend, for appellant.

Edward A. Chapleau, Chapleau, McInerny, Minczeski & Farabaugh, South Bend, for appellees.

YOUNG, Presiding Judge.

Mary C. Kranda, appellant-plaintiff, appeals from a negative judgment in a medical malpractice action against Houser-Norborg Medical Corporation and Dr. Keim Houser, M. D. The trial court granted judgment on the evidence as to the issue of informed consent and the issue of the defendant corporation's liability. The jury returned a verdict for Dr. Houser and judgment was entered accordingly.

On appeal, Kranda raises a number of issues for our consideration. For purposes of review, we have consolidated similar questions.

(1) Whether the trial court erred in permitting members of the review panel to testify and in admitting each individual panel members' written opinion into evidence.

(2) Whether the opinion of the Medical Review Panel should be excluded because it was rendered pursuant to the Indiana Medical Malpractice Act which Kranda contends is unconstitutional.

(3) Whether the trial court erred in refusing to admit into evidence the deposition of Dr. Roseman who testified at trial and the minutes of the Medical Review Panel meeting.

(4) Whether the trial court erred in withdrawing the issue of informed consent from the jury's consideration.

(5) Whether the trial court erred in the imposition of a "one pass rule."

(6) Whether the trial court erred in giving certain instructions and in refusing certain requested instructions.

(7) Whether the trial court erred in granting judgment on the evidence in favor of defendant Houser-Norborg Medical Corporation.

We affirm.

In October 1975 Kranda consulted Dr. Keim Houser, an obstetrician-gynecologist employed by Norborg-Houser Medical Corporation, concerning problems she was having with vaginal warts. At this time, Dr. Houser also noted a Bartholin cyst deep within the tissue on the left side of her vagina. From Kranda's medical history, Dr. Houser knew that a similar cyst had been surgically removed from the same area in 1972 and that Kranda suffered from Crohn's disease [1] which had resulted in a number of hospitalizations.

After several attempts to treat the warts with medication, Dr. Houser recommended and scheduled the surgical removal of them. Before this surgery, Kranda developed problems with the Bartholin cyst. She consulted Dr. Norborg about this problem, who prescribed antibiotics and hot baths. When this treatment caused the cyst to fill with pus and open, Dr. Norborg stated that he would schedule removal of the cyst on the same date as her other surgery.

On January 28, 1976 Dr. Houser did a preoperative examination and discussed the possibility of removing the cyst during the surgery for the warts. At this time he did not discuss her Crohn's disease or the risks associated with it in surgery. Dr. Devetsky, Kranda's treating physician for her Crohn's disease, discussed with Dr. Houser the use of steroids and stated that he would order the necessary steroids. Neither doctor discussed the effect of steroids on the healing process with Kranda.

Surgery was performed on February 6, 1976 by Dr. Houser. During the surgery, he removed the remaining part of the Bartholin gland and the cyst. In this process, Dr. Houser brought the cyst up and did a rectal exam to determine the location of the scar tissue from the prior surgery. He peeled the tissue away from the cyst. Dr. Houser testified that he could not see where the rectum was because of tissue fibrosis and scarring. As he was removing the cyst, he recognized a small rent (tear) in the rectal mucosa. Dr. Houser repaired this rectal laceration by sutures placed close to the rectum. That evening Dr. Houser told Kranda of the rectal entry and the repair

1. Her Crohn's disease was first discovered in 1969. Crohn's disease is an inflammation of the ileum of the small bowel and large colon. As a result of this disease, Kranda had already had three feet of her intestine in the right colon removed.

and stated that he did not think there would be any problems.

On February 10, 1976 Kranda was released. That evening she felt gas escaping from the incision. Fecal matter escaped from a hole not present prior to surgery. The following day she saw Dr. Houser who could find no fecal matter escaping from a hole. The deep rectal sutures were still intact. On the 13th of February she again went to see Dr. Houser for the same problem. Because Dr. Houser was not in the office his father, also an obstetrician-gynecologist, saw her and upon examination recognized a fistula. He recommended heat treatment until he could consult with his son, Dr. Keim Houser. On the same day, Kranda saw her internist. In view of her underlying illness, he immediately recommended going to Chicago for repair surgery. She entered Rush-Presbyterian-St. Lukes Hospital in Chicago the next day. At St. Luke's, Dr. Roseman, a surgeon, performed a temporary colostomy which diverted the fecal matter from the rectum to promote the healing of the fistula. Following this operation, a bowel obstruction developed as a result of her Crohn's disease and part of the bowel had to be removed. She underwent another operation for an ileostomy. In January 1977 Dr. Roseman eliminated the ileostomy and made the colostomy partial. Kranda then improved; however, several days later she developed an abscess which was lanced several times before she returned to St. Luke's Hospital for a complete colostomy. Other than activation of her Crohn's disease, Kranda has had no further complications. She currently has a complete colostomy.

■ Appellant Kranda first claims error in the trial court allowing two panel members to testify regarding their decisions and in admitting each panel member's written opinion because each opinion was based upon casual conversations with other physicians. Kranda refers to Indiana Code 16–9.5–9–4 [2] to support her contention that the only information to be considered under this act is evidence submitted in writing by the parties. While Section 4 might leave that impression if read alone, Section 6 of the same act permits the panel to consult with medical authorities.[3] Kranda argues, however, that this language means only that the panel may consult treatises, journals, medical textbooks and similar medical authorities. Therefore, she contends the panel member's opinions were not formulated in accordance with the statute and members should not be able to testify or have their opinions admitted. We disagree. In construing a statute words used are to be given their usual and ordinary meaning; a court should not so construe a statute as to willfully and unnecessarily narrow its provisions. *Evansville-Vanderburgh School Corporation v. Roberts*, (1979) Ind.App., 395 N.E.2d 291. To assign Kranda's meaning to the statutory term "medical authorities" would unnecessarily narrow this provision. The ordinary meaning given to "authorities" includes both written materials and individuals qualified in the field. *See e. g.* Webster's Third New International Dictionary 146 (1976). In addition, the term appears to refer to individuals when read in the context of the section which states that "[t]he panel may consult *with* medical au-

2. Indiana Code 16.–9.5–9–4 reads in part:
 The evidence to be considered by the medical review panel shall be promptly submitted by the respective parties in written form only. The evidence may consist of medical charts, x-rays, lab tests, excerpts of treatises, depositions of witnesses including parties and any other form of evidence allowable by the medical review panel. Depositions of parties and witnesses may be taken prior to the convening of the panel. The chairman of the panel shall advise the panel relative to any legal question involved in the review proceeding and shall prepare the opinion of the

 panel as provided in section 7 [16–9.5–9–7]. A copy of the evidence shall be sent to each member of the panel....

3. IC 16–9.5–9–6 provides:
 The panel shall have the right and duty to request all necessary information. The panel may consult with medical authorities. The panel may examine reports of such other health care providers necessary to fully inform itself regarding the issue to be decided. Both parties shall have full access to any material submitted to the panel.

thorities." IC 16.9.5–9–6. Ordinarily one consults *with* a person rather than a book or written materials.

■ Kranda further claims that these consultations are impermissible because she had no opportunity to cross-examine these consulted physicians, had no knowledge of these conversations and could not offer rebuttal evidence. However, Section 5 of the same act provides either party with the opportunity to convene the panel and question members concerning any matters relevant to the issues to be decided by the panel.[4] Thus, she had access to this information in her opportunity to question members as to whether and what consultations were made. She then had the opportunity to offer rebuttal evidence. Her claim is therefore without merit and the admission of testimony and the opinions were not error in this respect.

■ In addition, Kranda contends that these opinions are inadmissible because panel members were not advised of the law of evidence or legal standards applicable to a medical malpractice case. The record does not support this contention. Dr. Cook, one member of the panel, testified that the panel had a copy of the malpractice statute which the chairman went through in detail

in the panel's introductory preparation. Furthermore, the statute contemplates that the panel will function in an informal and reasonable manner. *Johnson v. St. Vincent's Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585. The panel does not conduct a hearing or trial and does not render a decision or judgment. Rather than adjudicate the merits of the claim, its purpose is to conduct a rational inquiry into the extent and source of the patient's injuries for the purpose of forming its expert opinion. *Id.* at 596. The chairman acts in an advisory capacity only,[5] supervising the panel to assure that each party has a reasonable opportunity to present its evidence and authorities. *See, e. g. Johnson, supra.* Nothing in the record suggests that the chairman did not fulfill his duty. Furthermore, we find nothing in the statute requiring the panel to comply with the formal rules of evidence in conducting its inquiry. Therefore we cannot find the opinions inadmissible on this basis.

■ Kranda also argues that each individual panel member's testimony and written opinion are inadmissible because they are hearsay and are contrary to IC 16–9.5–9–7[6] and IC 16–9.5–9–9[7] which she con-

**4.** IC 16–19.5–9–5 provides:
Either party, after submission of all evidence and upon ten [10] days' notice to the other side, shall have the right to convene the panel at a time and place agreeable to the members of the panel. Either party may question the panel concerning any matters relevant to issues to be decided by the panel before the issuance of their report. The chairman of the panel shall preside at all meetings. Meetings shall be informal.

**5.** IC 16–9.5–9–3 provides in part:
The attorney shall act as chairman of the panel and in an advisory capacity but shall have no vote. It is the duty of the chairman to expedite the selection of the other panel members, to convene the panel, and expedite the panel's review of the proposed complaint. The chairman may establish a reasonable schedule for submission of evidence to the medical review panel but must allow sufficient time for the parties to make full and adequate presentation of related facts and authorities.

**6.** IC 16–9.5–9–7 provides:

The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint. After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within [30] days, render one or more of the following expert opinions which shall be in writing and signed by the panelists:
(a) The evidence supports the conclusion that defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
(b) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
(c) That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.
(d) The conduct complained of was or was not a factor of the resultant damages. If so, whether the plaintiff suffered: (1) any dis-

**7.** See note 7 on page 1034.

tends provides only for a collegial opinion. We reject the hearsay argument. First, an expert witness can draw upon all sources of information coming to his knowledge or through the results of his investigation in order to enable him to formulate an opinion. *Trinity Universal Insurance Co. v. Town of Speedway*, (1965) 137 Ind.App. 510, 210 N.E.2d 95. The fact that the expert consulted with other individuals does not render his testimony hearsay and therefore inadmissible. *Id.* In *Rosenbalm v. Winski*, (1975) 165 Ind.App. 378, 332 N.E.2d 249, this court restated the rule in *Trinity*. The hearsay "considered" must be of a type normally found reliable and customarily relied upon by the expert in the practice of his profession. *Rosenbalm, supra.* Applying the foregoing to the present case, any hearsay considered by panel members consisted of information from other doctors—a source of information normally found reliable and customarily relied upon by experts in the medical profession. In addition Sections 4 and 6 of the Medical Malpractice Act, referred to above, permit consultations with other doctors and also requires panel members to testify if they are called. To accept Kranda's argument would be contrary to the case law of Indiana, as well as this statutory scheme. Thus, the testimony was not inadmissible because the opinions may have been based, in part, on hearsay.

◼ Kranda finally argues that these opinions are inadmissible because they were not in the form of a collegial opinion which she insists the statute requires. In the present case each panel member submitted his own opinion as part of the panel opinion. We cannot agree that the trial court erred in admitting these separate opinions as part of the whole opinion. Indiana Code 16–9.5–9–9 permits *any report* of the expert opinion reached by the panel to be admitted and states that such is not conclusive. Further, Kranda's contention would prevent a panel member from dissenting. The statute does not prohibit individual panel member opinions nor does it indicate that the Legislature contemplated a unanimous concensus in the opinion. In fact Section 10 of the Act[8] contemplates the possibility of not having a majority opinion. Just as this court may issue its opinion in the form of three concurring opinions, so also may the medical review panel issue its opinion in such a manner. Even assuming error in this respect, we could not determine if such was harmful error because Kranda has not provided us with these opinions to review in making this determination. For these reasons, we reject this contention.

Kranda next argues that the Indiana Medical Malpractice Act, IC 16–9.5–1–1 *et seq.* is unconstitutional for the following reasons:

(a) The Act has a "substantially chilling effect" on the exercise of constitutionally protected rights including the right to redress for injuries, access to the courts, and trial by jury because it requires submission of the claim to the review panel.

(b) The Act is vague to the point of being capable of an interpretation violative of constitutionally protected rights by requiring a procedure to be followed that does not provide a method of resolving legal, procedural and evidentiary disputes.

---

ability and the extent and duration of the disability, and (2) any permanent impairment and the percentage of the impairment.

7. IC 16–9.5–9–9 provides:

Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify.

A panelist shall have absolute immunity from civil liability for all communications, findings, opinions, and conclusions made in the course and scope of duties prescribed by this article.

8. IC 16–9.5–9–10 provides in part:

Fees of the panel including travel expenses and other expenses of the review shall be paid by the side in whose favor the majority opinion is written. If there is no majority opinion, then each side shall pay one-half [½] of the cost.

(c) The Act violates Article 1 Section 12 of the Indiana Constitution which states in pertinent part: "Justice shall be administered . . . speedily, and without delay." by creating a quasi-judicial procedure which results in extended delay before a case can be filed in a Court of Law and which does not provide any method of resolving the controversy.

(d) The Act violates equal protection of laws under the Fourteenth Amendment of the United States Constitution and Article 1, Section 23 of the Indiana Constitution for it creates an artificial, arbitrary, and unreasonable legislative classification between persons subjected to its provisions.

(e) The Act violates Article 7, Section 1 of the Indiana Constitution in that it constitutes an improper delegation of Judicial Power to the Indiana Department of Insurance.

(f) The monetary limitation upon a plaintiff as provided by the Act is an unwarranted violation of the plaintiff's constitutional right to trial by jury in that a jury is not permitted to assess reasonable compensation on an individual basis and the limitation on damages creates an impermissible irrebuttable presumption by depriving an injured person of the right to prove that his individual claim is not excessive, even though it exceeds the Statutory Limitation.

(g) The Act violates the due process rights found in the United States and Indiana Constitutions by preventing a patient from recovering reasonable damages commensurate with the injury incurred.

(h) The Act violates the right to trial by Jury as guaranteed by the Seventh Amendment of the United States Constitution and Article 1, Section 20 of the Indiana Constitution by increasing the burden of proof imposed upon plaintiffs in overcoming the Medical Review Panel opinion.

(i) The Act violates the plaintiff's constitutional right to a trial by an impartial Jury, in that the Medical Review Panel is composed of fellow-doctors and colleagues of the defendant doctor; that these fellow-doctors and colleagues already benefit by the very existence of the Medical Malpractice Act; and that these fellow-doctors and colleagues also benefit directly and indirectly by a finding of no Malpractice in this case since this will serve to keep down the insurance premiums paid by the members of the Medical Review Panel as well as keep down the amount of any future judgment in any possible unrelated Malpractice actions against the Members of this Medical Review Panel.

Our Supreme Court in *Johnson, supra* has upheld the constitutionality of this Act. In Kranda's reply brief, she concedes that *Johnson, supra* is dispositive of many of these constitutional issues. However, she claims that several issues were not directly discussed in *Johnson*. Although we disagree, we will briefly address these issues separately.

Kranda first claims that the court did not address the Act's "chilling effect" on constitutionally protected rights. Kranda urges us to find that the Act has a "substantial chilling effect" on her right to redress for injuries, access to courts and trial by jury because it requires submission of the claim to the review panel. As was noted in *Whitaker v. St. Joseph's Hospital*, (1981) Ind.App., 415 N.E.2d 737, this argument was indeed specifically rejected when our Supreme Court in *Johnson, supra* at 591–596, 604 upheld the constitutionality of the Act on this point.

Kranda next contends that the Act creates a procedure prohibitively costly in time and money without corresponding benefits. The court in *Johnson* discussed the expense and delay when it said:

Delay in the commencement of a trial and the expense of investigating and marshalling evidence are part and parcel of the preparation of any piece of civil litigation. Delay routinely occurs between the decision to prosecute a claim and the trial. Expenses for investigation and preparation attend the pre-trial prep-

aration of all claims. The panel submission requirement generates evidence admissible at a future trial of the claim. The delay in the trial occasioned by this process and the cost attendant to it are in major part like those to be expected in any case. The participation by the parties in the panel processes will satisfy to a great extent their preparation needs. Such satisfaction will tend to reduce total aggregate time for trial preparation. Thus, the delay complained of will be offset to an appreciable extent. The cost to the party in whose favor the opinion is rendered would be in the range that such party would expect to pay to develop such evidence individually. And the cost to the party against whom the opinion is rendered has been subjected to a cost by the process which would be much the same as he expects to pay to discover his opponent's evidence.

*Johnson, supra* at 592. Our Supreme Court has, therefore, upheld the procedure as not being unduly costly in time or money.

■ Kranda also claims that the Act creates a quasi-judicial procedure without an administrative remedy. She relied upon a portion of the Indiana Constitution, Article 1, Section 12 which states "Justice shall be administered ... speedily, and without delay." This procedure was thoroughly analyzed in *Johnson, supra* at 591–596; *Whitaker, supra* at 746. Further, the right to trial is fully accorded to the plaintiff after the delay occasioned by the panel submission requirement; her remedy is provided through this adjudicative process in court. Thus, this argument is rejected.

Her contention that the Act gives judicial power to the Department of Insurance must also fail. She claims that the Act allows the Department to determine the jurisdiction of the court and that it ousts the civil courts of jurisdiction until the "medical review panel" hands down its opinion which has no force of law. Despite assertions to the contrary the legislature has not delegated judicial power to the Indiana Department of Insurance through this Act. *Whitaker, supra,* at 746. As this court stated:

Such power clearly resides with the courts. Neither the Indiana Department of Insurance nor the medical review panel makes an adjudication on the merits of a claim. Neither conducts a hearing or a trial and neither renders a decision or a judgment on the claims before it. The Department of Insurance is merely to advise those who inquire as to the status of the health care providers. The medical review panel is to conduct a rational inquiry into the source and extent of the patient's injury for the purpose of forming its expert medical opinion. *Johnson, supra* at 596. These are not judicial functions.

*Id.* The procedure requiring filing of a proposed complaint with the Commission and submission of the claim to the panel *before* the filing of suit has been upheld in *Johnson, supra* and requires no further discussion.

■ Finally Kranda claims that the Act violates the separation of powers doctrine. Because the Act permits the panel opinion to be admitted into evidence, she contends that the Legislature has usurped the courts' judicial authority to rule on the admissibility of evidence. This argument was also discussed and rejected in *Johnson, supra* at 597, 598. Additionally, she makes an argument based on hearsay which we have rejected earlier in this opinion. Therefore, this claim of a violation of the separation of powers doctrine fails as did her other constitutional attacks.

■ We now turn to Kranda's assignment of error relating to the trial court's refusal to admit certain items into evidence. Kranda first claims the court erred when it refused to permit the entire deposition of Dr. Roseman to be read into evidence. Dr. Roseman testified for Kranda at trial. Notwithstanding his trial testimony, Kranda argues that Roseman's deposition should have been read to the jury because the two panel members who testified considered it in formulating their opinion. The authorities cited by Kranda do not support her contention nor does the Medical

Malpractice Act require or even suggest the admission of materials submitted to the panel. Therefore we must consider whether the exclusion was an abuse of discretion. A trial judge has considerable latitude in the admission or rejection of evidence. *Lovko v. Lovko,* (1978) Ind.App., 384 N.E.2d 166. Because the same facts and opinion were covered in the doctor's trial testimony, the jury already had the information before it which the panel had considered. The trial court's exclusion of the deposition was within its discretion inasmuch as the contents of it were put into evidence through the doctor's trial testimony. *See e. g. Auto-Teria, Inc. v. Ahern,* (1976) 170 Ind.App. 84, 352 N.E.2d 774; *Killion v. Updike,* (1974) 161 Ind.App. 577, 316 N.E.2d 837. Therefore the trial court committed no error in excluding the deposition.

We also find no abuse of discretion in the court refusing to admit the panel minutes. The Act does not require their admission. In addition, Kranda first offered them for evidence on recross of a defense witness. As the court correctly noted, the minutes were beyond the scope of the redirect of the witness. The second time the minutes were offered into evidence, defense counsel objected because they were not listed in the pretrial order. While the pretrial order can be amended, *see e. g. Colonial Mortgage Co. of Indiana, Inc. v. Windmiller,* (1978) Ind.App., 376 N.E.2d 529, Kranda did not move to have it amended. The court committed no error in sustaining the objection and refusing to admit the minutes.

Kranda further argues trial court error in granting a judgment on the evidence in favor of defendants Houser and the medical corporation as to the issue of informed consent. In considering a motion for judgment on the evidence, the trial court must look only to the evidence and the reasonable inferences drawn therefrom most favorable to the nonmoving party. To sustain a TR. 50(A) judgment for a defendant, the evidence must be susceptible of but one inference in favor of the moving party and without conflict. Ind.Rules of Proce-

dure, Trial Rule 50(A); *Stockberger v. Meridian Mut. Ins. Co.,* (1979) Ind.App., 395 N.E.2d 1272.

If reasonable persons might differ or if there is any, evidence or legitimate inference to support the plaintiff's allegations, a judgment on the evidence is improper. *Id.; Huff v. Travelers Indemnity Company,* (1977) 266 Ind. 414, 363 N.E.2d 985. Such a motion "may properly be granted only if there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof." *Ortho Pharmaceutical Corp. v. Chapman,* (1979) Ind.App., 388 N.E.2d 541, 544.

Kranda contends she gave no informed consent because Dr. Houser and the medical corporation failed to warn of the risk of untoward consequences. With the above standard for judgment on the evidence in mind, we must examine Kranda's evidence, if any, relating to necessary disclosures. An action prefaced on the doctrine of informed consent is one based on negligence; therefore, the plaintiff must show (1) a duty owed to her, and (2) a breach of that duty (by falling below the set standard of care) (3) which proximately caused a compensable injury. *See e. g. Revord v. Russell,* (1980) Ind.App., 401 N.E.2d 763, at 766. Indiana recognizes the duty of a physician to make a reasonable disclosure of material facts relevant to the decision which the patient is requested to make. *Id.* (citing *Joy v. Chau,* (1978), Ind. App., 377 N.E.2d 670, 676–77).

The general rule is that expert medical testimony is required to establish the content of such "reasonable disclosure" unless the situation is clearly within the realm of laymen's comprehension as where the disclosure is so obvious that laymen could recognize the necessity of such disclosure. *Revord, supra* (citing Annot., 52 A.L. R.3rd 1084 (1973)). Experts are ordinarily indispensable to identify and elucidate for the fact finder the risks of therapy and the consequences of leaving existing maladies untreated. *Revord, supra* at 766 (quoting

*Canterbury v. Spence,* (C.A.D.C.1972) 464 F.2d 772, 786). Because Bartholin cyst surgery is not a matter within the common knowledge or experience of laymen, medical testimony was required to establish a prima facie case under informed consent. Kranda presented two medical witnesses, neither of whom were gynecologists or physicians devoting special attention to Bartholin cyst treatment. Even assuming each to have been competent to testify as to a "reasonable disclosure" for a gynecologist, neither testified that a "reasonable disclosure" would include the risk of injury to the rectum. In fact all medical testimony indicated that such an injury would not be expected. All expert witnesses, including defendant Houser, testified that they had never seen the rectum entered in this type of surgery. Therefore, Kranda failed to show that even if Houser had made a full disclosure, the risk of injury actually suffered (entering the rectum and resulting fistula) should have been among the risks disclosed.

■■■■ Kranda did testify that had she known this risk (of cutting the rectum), she would not have submitted to the treatment. However, there is no evidence that revelation of any other risk would have changed her consent. Thus, the only evidence that she would have foregone the treatment was based upon a risk which defendant had no duty to disclose. Because proximate cause is a necessary element in any tort case, there must be a causal relationship between the physician's failure to inform and the injury to plaintiff. *Revord, supra.* There is no proximate cause if the plaintiff would have submitted to the treatment even if full disclosure had been made. *Revord, su-*

*pra* (citing *Natanson v. Kline,* (1960) 186 Kan. 393, 350 P.2d 1093, modified, 187 Kan. 186, 354 P.2d 670). Because there is no evidence that any risk, other than cutting the rectum, would have negated her consent and because that risk was not established as one which the doctor had a duty to disclose, Kranda has failed to establish that she would not have consented if a full disclosure had been given. Therefore, the judgment on the evidence was proper because there is no evidence to support the element of proximate cause.

■■■■ Kranda next contends that Local Rule 7(C) of the Rules of the St. Joseph Superior Court[9] regarding jury selection is an abuse of discretion. The right of a civil litigant to peremptory challenges is granted by Ind.Code 34–1–20–7. However, a trial court, in the exercise of its discretion, may to some extent direct the manner of conducting the impanelling of juries and the manner of exercising the right of peremptory challenges. *Cochran v. State,* (1978) 269 Ind. 157, 378 N.E.2d 868. Reasonable limitations on such right may be fixed so long as the right of challenge is not taken away, and reasonable opportunity is given to challenge. *Lund v. State,* (1976) 264 Ind. 428, 345 N.E.2d 826; *Veach v. McDowell,* (1962) 133 Ind.App. 628, 184 N.E.2d 149. Local rule 7(C) permits counsel for each party to examine the panel once "without passing"[10]. Each counsel reserves peremptory challenges until all counsel have examined the panel once. When the party is required to exercise his challenges, he has heard the examination by his opponent and has had an opportunity to conduct his own examination. As was noted in *Wasy v. State,* (1955) 234 Ind. 52, 123

9. Local Rule 7(C) of the St. Joseph Superior Court reads in part:

"Where counsel conduct some portion of the examination, counsel for each party may examine the panel once without passing. Counsel may be permitted to reopen the examination of passed jurors, on motion, in the discretion of the Court. Counsel shall reserve preemptory (sic.) challenges until all counsel have examined the panel once. All counsel shall then approach the bench and make their challenges in the manner and se-

quences that the Judge directs, and shall then pass. Jurors who are not thus excused will be deemed accepted by all parties and may not be examined further by counsel without leave of Court."

10. From the context of the rule, "without passing" appears to be used in this paragraph to mean "without accepting." Thus, counsel can pass the jury once to the opponent for examination without exercising any peremptory challenges.

N.E.2d 462, a party then has at hand all the requisite information for making an intelligent choice of whether to challenge those before him. Thus the rule itself is proper.

 We have no record of the voir dire examination of the jury or objections made, therefore, we are unable to make a determination as to whether or not the court properly applied the rule. Appellant has the duty to bring a record which supports his claimed errors and which is sufficient to permit an intelligent decision of the issues. Ind. Rules A.P. 7.2(A)(2); *Anderson v. Indiana State Emp. Appeals Commission*, (1977) 172 Ind.App. 529, 360 N.E.2d 1040. Thus the issue of whether the rule was properly applied is waived.

 Kranda challenges several instructions given by the trial court. The trial court gave the following instruction over objection:

"You are instructed that expert testimony is necessary in this case to establish the standard of care to be exercised by physicians and surgeons. In determining what the standard of care was in the treatment rendered, you will be guided solely by the experts who have testified on the subject and you may not define a standard of care of your own."

A similar instruction was accepted in *Davis v. Schneider*, (1979) Ind.App., 395 N.E.2d 283. See, also *Long v. Johnson*, (1978) Ind. App., 381 N.E.2d 93. Kranda argues that such an instruction misleads the jury because it gives the impression that the panel member's opinion is conclusive. No such impression exists. The instruction was given to instruct the jury concerning the establishment of an appropriate standard of care owed by Houser to Kranda. The instruction is sufficiently clear and we do not believe that it would have misled the jury into believing the only experts to consider in determining this standard were the panel members. The general rule in malpractice cases is that, in determining whether the physician and surgeon have exercised ordinary skill and care in the diagnosis of the disease, the treatment of the patient, and the result obtained thereby, the jury must

be guided solely by the testimony of physicians and surgeons because of the scientific nature and character of the questions usually involved in such cases. The jury cannot set up standard of skill and care of its own. *Davis, supra* at 288 (quoting *Adkins v. Ropp*, (1938) 105 Ind.App. 331, 335, 14 N.E.2d 727, 729). Kranda argues further in her brief that the instruction is defective because expert evidence is not required in that the treatment warranted an inference of lack of care. Because this argument was not the same basis that she argued to the trial court; we need not address this issue. TR. 51(C); *Davis, supra.*

Kranda's next allegation of error concerning instructions arises from the court giving the following:

In determining the weight to which the testimony of any expert witness is entitled, you should consider the experience of the witness in the field with respect to which he has testified, how recently he has actively practiced or participated in such field, whether he is familiar with the advanced state of medical practice in such field in the community wherein the defendants have practiced or in similar communities, whether said witness is permitted or prohibited from practicing the specialty, regarding which he testified, in hospitals in the community wherein the defendants practice or in similar communities.

 In her brief, Kranda raises only two objections to this instruction which were also raised at trial. She first claims that whether or not the expert witness had experience in the field with respect to which he testified or whether he practiced in it or was familiar with such a field should not be considered in determining the weight to be given to that testimony. We disagree. To qualify as an expert witness on a subject, the witness must have sufficient skill, knowledge or experience in that field in order for his opinion to be of any value to the jury. *Davis, supra* at 290. The jury may consider what experience or familiarity the witness has in the field about which he testified in determining the weight to be given to such testimony.

■ Kranda further argues that the reference in the instruction to "in such field in the community . . . or in similar communities" applies the "locality rule" which is not applicable to a medical specialist, in particular a Board Certified physician in obstetrics and gynecology where expert testimony suggested a national standard in this field. The "modified locality rule" is accepted as the law in Indiana. *Joy v. Chau,* (1978) Ind.App., 377 N.E.2d 670. The Supreme Court of Indiana approved an instruction applying the "modified locality" rule to physicians practicing a medical speciality in *Worster v. Caylor,* (1953) 231 Ind. 625, 110 N.E.2d 337. *Id.* The rule recently received approval in *Bassett v. Glock,* (1977) Ind.App., 368 N.E.2d 18. Further, the only expert who was not from the same community was from Chicago. The expert testimony suggested that Chicago was a similar community as related to the practice of gynecology. Thus, even if such instruction were erroneous we do not feel that the instruction could have been the basis of the verdict. Therefore, the giving of it would be harmless error.

■ Kranda also challenges the following instruction:

> You are instructed in this case that if you find from a fair preponderance of the evidence that the defendants in this case exercised that degree of skill and knowledge in their treatment which was ordinarily possessed by physicians and surgeons in similar circumstances and in similar fields of specialty at the time of this incident, then the plaintiff cannot recover in this action.

She claims that this instruction is improper because it is argumentative, negative and repetitious. Although stated in the negative, it is a correct statement of the law and not argumentative. While we recognize mandatory instructions are not the best type of instructions to give a jury, cases reversing on this ground generally have more than one such instruction urging the jury *repeatedly* to return a verdict for one of the parties. See *White v. Evansville American Legion Home Ass'n,* (1965) 247 Ind. 69, 210 N.E.2d 845. In *White, supra* the court told the jury eighteen different times, in substance, that the plaintiff could not recover. In the present case, we find no other mandatory instruction. Thus, we do not have the situation in *White, supra,* where the jury could easily conclude that the trial judge is repeatedly urging them to return the verdict for the defendant.

■ Further, we do not find this instruction unduly repetitious with the Court's Instruction Number 4. The court's instruction is a general statement defining negligence whereas this instruction applies the law to the particular facts of this case. Even if the instruction was repetitious, this court is reluctant to reverse a judgment solely on that ground. *Keeshin Motor Express Co. v. Glassman,* (1942) 219 Ind. 538, 38 N.E.2d 847. We recognized the principle that unnecessary repetition may be reversible error; however, in any set of instructions there is apt to be some reiteration of the applicable rules of law. *Id.* [O]nly in exceptional cases, and particularly where from the whole record we cannot fairly say that a correct result was reached, will we attempt to reverse. *Keeshin, supra.*

■ Instruction Number 11 which is also raised as error reads as follows:

> You are instructed that a physician is not bound to use any particular method of treatment; if, among physicians and surgeons of ordinary skill and learning, more than one method of treatment is recognized, it is proper for a doctor to adopt any recognized method of treatment. The fact that another method of treatment existed, or that another physician would have used a different method does not establish negligence.

The chief objection appears to be that the jury was not informed that it must consider the facts and circumstances of this particular case in determining if Dr. Houser selected an appropriate method of treatment. The same objection was raised and rejected in *Joy v. Chau,* (1978) Ind.App., 377 N.E.2d 670 when it accepted a similar instruction. Kranda's second argument is that the instruction confuses the jury by pointing to

one issue. It is elementary that the instructions to the jury must be viewed as a whole and construed in harmony with each other and it is not necessary for any one instruction to contain all the law applicable to the case. *Joy, supra* (citing *Evans v. Breeden*, (1975) 164 Ind.App. 558, 330 N.E.2d 116). Other instructions established the duty owed to plaintiff and the standard of care required. When construed together, the instructions adequately address the issue of negligence in making the decision concerning treatment and in performing the surgery. Additionally, the jury was instructed that it must construe all the instructions as a whole and in harmony with each other, and that it must consider the evidence in light of the law as contained in the instructions. When these instructions are read as a whole, they do not mislead the jury.

 Kranda also claims that the court's instruction defining negligence was misleading because it allowed the jury to apply it equally to the plaintiff as well as to the defendants. The instruction provides:

> Negligence is the failure to do what a reasonably careful and prudent person would have done under the same or like circumstances, or the doing of something which a reasonably careful and prudent person would not have done under the same or like circumstances; in other words, negligence is the failure to exercise reasonable and ordinary care.

> Reasonable and ordinary care is such care as a reasonable, careful and ordinarily prudent person would exercise under the same or similar circumstances.

We do not see how this instruction could cause the jury to consider any contributory negligence of plaintiff. It does not refer to plaintiff. When read in context with the other instructions, it is clear that the instruction is referring to the defendant's basis of liability. Without more we can find no error in the court giving this instruction.

 The court's instruction defining proximate cause is claimed to be defective

because it refers to proximate cause in the singular; thereby, foreclosing the jury's consideration of more than one cause. Kranda's problem is that she did not object to this instruction when it was read as a Preliminary Instruction. To permit Kranda to contest the rereading of a Preliminary Instruction after it became a Final Instruction would effectively void the statutory language of TR. 51(A) unless the evidence presented or events occurring at trial have changed the possible application of the instructions. *See, e. g. Cochrane v. Lovett*, (1975) 166 Ind.App. 684, 337 N.E.2d 565. This specific objection was available at the time the preliminary instruction was given and was not affected by the evidence or events at trial. Therefore, this question is waived. Even if not waived we would find no error because Final Instruction Number 10 adequately covered the law of proximate cause, and that defendant's negligence need not be the sole proximate cause. Thus when read as a whole, the instructions defeat this objection.

The objection to the court's instruction number 11 was based on the unconstitutionality of the Medical Malpractice Act which has been held constitutional by our Supreme Court in *Johnson v. St. Vincent's Hospital, supra*. Therefore, we need not discuss this contention.

 The court's instruction number 12 was given which was a peremptory instruction removing the issues of informed consent and liability of the medical corporation from the jury.[11] A peremptory instruction may be given when there is absence of evidence to establish one or more of the elements essential to plaintiff's right to recover. *Gibson v. Froman*, (1966) 138 Ind. App. 497, 212 N.E.2d 25. Because we have decided the issue of informed consent was properly withdrawn from the jury, this instruction as to that issue was not error. The part of the instruction concerning the medical corporation, although error, was harmless error in view of the verdict in

---

11. The objections to this instruction were the same as those considered in determining the propriety of withdrawing these issues from the jury and, therefore, are discussed fully elsewhere in this opinion.

favor of the defendant doctor and our decision that the granting of the TR. 50 motion was harmless error.

■ Kranda next contends that the court erred in refusing to give her tendered instructions numbered 1, 2, 3, 4, 5, 12, and 13. In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Dahlberg v. Ogle,* (1978) Ind., 373 N.E.2d 159, 165 (quoting *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836).

■ Kranda's tendered instruction number 1 outlined Houser's duty to use reasonable skill and diligence ordinarily exercised by other members of Houser's profession. The substance of this instruction was specifically set forth in Final Instructions numbered 2, 3, and 6. It is not error to refuse an instruction if the substance is covered by other instructions which are given. *Dahlberg v. Ogle, supra.*

■ Kranda tendered an instruction on res ipsa loquitur which, although a correct statement of the law, was refused because evidence of specific acts of negligence were presented. Presentation of evidence of specific acts of negligence is no longer recognized as a valid basis for removal of the doctrine of res ipsa loquitur from a lawsuit. *New York, Chicago & St. Louis R. Co. v. Henderson,* (1957) 237 Ind. 456, 146 N.E.2d 531. However, we must affirm a trial court's action if there is any legal ground upon the record for affirmance, even if the reason given by the trial court is erroneous. *Elmore v. City of Sullivan,* (1978) Ind.App., 380 N.E.2d 108. Thus we must determine if there was a proper ground for rejecting this instruction.

■ In *Carpenter v. Campbell,* (1971) 149 Ind.App. 189, 271 N.E.2d 163 this court discussed the use of this doctrine in a medical malpractice case:

As a general proposition it may be stated that the doctrine of res ipsa loquitur permits negligence to be inferred from the unusual character of an injury suffered when it occurs while a patient and his actions or reactions are under a doctor's care and exclusive control. For the doctrine to be applicable, the injury must be of a character which would not occur but for an act of negligence and it must be caused by an agency or instrumentality within the exclusive control of the physician. In the last analysis, res ipsa loquitur is an evidentiary doctrine—a mere method of proof. It is premised upon an assumption that in certain instances an occurrence is so unusual that absent a reasonable justification those in control of the situation should be held responsible.

The doctrine may be invoked in medical malpractice actions when a layman is able to say that as a matter of common knowledge the consequences of the professional treatment are not those which ordinarily result if due care is exercised when there is no basis of common knowledge for such a conclusion, application of the doctrine may be grounded upon expert testimony. *Id.* at 271 N.E.2d 167. From the evidence presented, there is no question that the injury occurred while Kranda was under Dr. Houser's care and exclusive control. The issue, then, is whether the injury was of such character which would not ordinarily occur but for an act of negligence. *Brook v. St. John's Hickey Mem. Hosp.,* (1977) Ind.App., 368 N.E.2d 264 (rev'd on different grounds 269 Ind. 270, 380 N.E.2d 72). In the present case, there is no basis of common knowledge for such a conclusion; therefore, we must determine if there is expert testimony to support this conclusion.

■ Dr. Cook and Dr. Plain testified that in their combined seventy-five years of clinical experience they had never seen a fistula following a Bartholin gland excision. Dr. Houser stated that he had never entered the patient's rectum in thirty prior Bartholin cyst operations. In addition Dr. Roseman testified that he had not heard of a surgeon entering the rectum via the vagi-

na. Generally, this evidence would support the conclusion that this injury is one which does not ordinarily occur. However, this evidence is defective in that no expert testified that this injury would not ordinarily occur *but for negligence.* Furthermore, no one testified that this would not ordinarily occur in Bartholin cyst surgery on a Crohn's disease patient who had one prior surgery and resulting scar tissue. Each, in fact, testified that the situation made the surgery more complicated and more difficult. No one was familiar with a similar situation. Thus, we find no evidence to support the conclusion that the injury was one which would not ordinarily occur in the exercise of due care and the refusal of Kranda's instruction on this subject was proper.

■ Kranda next alleges error in the court's refusal of the following tendered instruction:

> If you find from a greater weight of the evidence that the symptoms and physical conditions existing in the plaintiff, Mary Kranda, were such as to require a careful and prudent physician and surgeon to make further investigation or more and different tests before making a diagnosis, and if you find from the evidence that the defendant, Keim T. Houser, M.D. did not make such investigations or tests, and if you further find from the evidence that as a direct and proximate result of such failure, if any, the plaintiff Mary Kranda received improper treatment from which she later suffered, then you may find the defendant Keim T. Houser, M.D liable for all the damages and injuries suffered by the plaintiff Mary Kranda as a result of such failure.

This instruction incorrectly states the law. It would permit the jury to consider any evidence to determine if a careful and prudent physician and surgeon would have made further investigation and tests before diagnosis. A court instruction correctly stated that the only evidence to be con-

sidered on such an issue is medical expert testimony. *Davis, supra;* therefore this instruction could mislead the jury. Further, the required care must relate to physicians and surgeons who devote special attention to the ailment, its diagnosis and treatment in similar localities. *Bassett, supra.* The refusal of a defective instruction is not error. *Smith v. State,* (1979) Ind., 388 N.E.2d 484. In addition, we note that the substance of this instruction was covered by other court instructions. *See, e. g. Evans v. Breeden,* (1975) 164 Ind.App. 558, 330 N.E.2d 116. Therefore, the refusal of this instruction was proper.

■ Kranda also tendered an instruction that if a physician or surgeon, such as Dr. Houser, knows or should know that a specialist in another field of medicine is required in order to effectuate proper treatment to the patient, it is the duty of the doctor to so advise the patient. As Kranda notes in her brief, this instruction sets out the duty of a doctor to refer a patient to a specialist when the patient's ailment is beyond the doctor's abilities. *Rahn v. United States,* (1963) 222 F.Supp. 775, 780, 35 A.L. R.3d 349. No expert testified that Dr. Houser should have referred Kranda to another doctor. Dr. Cook testified that he consults with an internist or gastroenterologist when he has a gynecology patient with Crohn's disease. While this testimony could support an instruction concerning a duty of consultation, it does not provide probative evidence of a duty of referral in this case. Therefore, the trial court did not err in refusing this instruction. Furthermore, the legal principle contained in this instruction was also covered in other court instructions given by the court. *See e. g. Evans, supra.*

■ Kranda argues that her tendered instructions concerning the doctor's limited liability for an occurrence of malpractice and the fact that any recovery in excess of the $100,000.00 limitation is recovered from the Patient Compensation Fund[12] should have been given in light of

---

**12.** IC 16–9.5–2–2 generally provides that a physician found negligent "is not liable for an amount in excess of $100,000.00 for an occurrence of malpractice" and that any amount in excess of $100,000.00 is recoverable from the patient's compensation fund.

publicity surrounding the medical malpractice "crisis" and the extravagant claims of financial disaster made by the health care industry. While these tendered instructions are correct statements of the law, they are not relevant to the issues at hand. Instructions must be relevant to the issues as formulated at trial, and this requirement is not necessarily satisfied by a correct statement of the law. *Hotz v. Gelsthorpe*, (1979) Ind.App., 387 N.E.2d 78. The purpose of instructing jurors is to advise them of a particular question they are to determine and to inform them as to the law and how to apply it to the facts as they find them to be from the evidence. *Coleman v. Chapman*, (1966) 139 Ind.App. 385, 220 N.E.2d 285. There is no question before the jury concerning the subject of these instructions. In addition, the instructions are objectionable not only because they are irrelevant but because they tend to prejudice the jury against the defendant as do other collateral sources of compensation instructions. *See, e. g. Miller v. Alvey*, (1965) 246 Ind. 560, 207 N.E.2d 633. The instruction was properly refused.

■ Kranda finally argues that the trial court erred in granting judgment on the evidence in favor of defendant Houser-Norborg Medical Corporation. The trial court sustained this motion on the basis that a medical corporation cannot be liable for malpractice because it cannot practice medicine. In *Birt v. St. Mary Mercy Hosp. of Gary, Inc.*, (1977) Ind.App., 370 N.E.2d 379 this court held that the corporate entity organized under the Indiana Medical Professional Corporation Act is liable for malpractice committed by one of its members. Therefore, the trial court did err in granting judgment on the evidence as to the corporation when it had also ruled that Kranda had made a prima facie case against defendant Dr. Houser. However, this error was harmless because of the jury's verdict for defendant Houser.

■ Kranda argues for the first time in her reply brief that the corporation's liability need not be based on vicarious liability. Rather the corporation can be liable for its own acts of negligence. Because this argument was not included in her motion to correct errors or her original brief and because she failed to direct us to any part of the record which would support this proposition, she has waived this issue. A.R. 8.3(A)(7); see, e. g. *Clow Corp. v. Ross Tp. School Corp.*, (1979) Ind.App., 384 N.E.2d 1077; *Highland v. Williams*, (1975) 166 Ind. App. 492, 336 N.E.2d 846; *Saloom v. Holder*, (1974) 158 Ind.App. 177, 307 N.E.2d 890.

The judgment of the trial court is affirmed.

HOFFMAN, P. J. (sitting by designation), and MILLER, J., concur.