**Norman STUART, Pike Township Trustee, and the Pike Township Advisory Board, Floyd Bass, Jr., Mrs. John E. Palmer and Mrs. Ed Scudder, Appellants-Defendants,**

v.

**Timothy E. FAULK, Harold L. Bannister, James H. Cleek, Garry D. Dowden and Michael A. Tyler, Appellees-Plaintiffs.**

**No. 2–281A46.**

Court of Appeals of Indiana,
Fourth District.

Oct. 5, 1981.

Gerald L. Cowan, Thomas A. Withrow, Douglas S. Jones, Diane Hubbard Kennedy, Henderson, Daily, Withrow, Johnson & Gross, Indianapolis, for appellants-defendants.

John C. Ruckelshaus, Walter F. Lockhart, Ruckelshaus, Roland & O'Conner, Indianapolis, for appellees-plaintiffs.

CHIPMAN, Presiding Judge.

Norman Stuart, the Pike Township Trustee, and the Pike Township Advisory Board, (the Township) appeal a declaratory judgment granted in favor of Timothy E. Faulk, Harold L. Bannister, James H. Cleek, Garry D. Dowden and Michael A. Tyler (the Firemen). The Township contends the trial court erred in finding the Township main-

tained a regularly organized and paid fire department and that the Firemen, as members of the fire department, were eligible to be included in the State's Firemen's Pension Fund (the 1937 pension fund) pursuant to Ind.Code 19–1–37–1 *et seq.*

We affirm.

## FACTS

All parties stipulated to the following facts. During 1975, 1976, 1977, and part of 1978 the Township contracted with Pike Township Volunteer Fire Department, Inc. (the Corporation) for fire protection. The Firemen, members of the Pike Township Fire Department, were paid by the Corporation. From its property tax fund the Township paid the Corporation approximately $200,000 per year. Additionally, the Corporation received state and federal revenue sharing funds from the Township.

During the four years covered, the Firemen worked 47.5 hour work weeks and their 1975 salaries of $9,000 had risen to $13,200 by 1978.

On November 25, 1975, the Township passed a resolution which recognized the Firemen as composing the paid fire department force in Pike Township, and they therefore were entitled to the benefits of the 1937 pension fund.[1] The resolution was made retroactive to January 1, 1975, and from then until May 25, 1979, statutory pension assessments were taken from the Firemen's paychecks.

On January 2, 1978, the Township nullified the November 25, 1975, resolution believing it was invalid since the Township did not "own" any firefighting equipment nor did it "employ" a staff of firefighters. Since July 1, 1978, the Firemen have been paid directly by the Township.

Due to a change in the law, the Firemen joined the 1977 Firefighter's Pension Fund

(the 1977 pension fund) pursuant to Ind. Code 19–1–36.5–1 *et seq.* effective January 1, 1979. On August 22, 1979, the Firemen filed a complaint for damages and requested a declaratory judgment that the 1975 resolution was valid and that the Firemen were within the purview of the 1937 pension fund when the resolution was adopted.

After reviewing the stipulations and listening to oral argument the trial court ruled the Firemen were full-time paid members of the Pike Township Fire Department for the purposes of IC 19–1–37–1 *et seq.*, the Firemen were eligible to participate in the 1937 pension fund, the 1975 resolution was valid, it was erroneously nullified in 1978,' and the Firemen were "entitled to and are covered by the benefits of the Firemen's Pension Fund Statute as it existed in 1975."[2]

The issue on appeal is whether the Township had the authority to establish the firemen's pension fund as it attempted to do by its 1975 resolution. The key to this question is whether the Township maintained a regularly organized and paid fire department.

## ELIGIBILITY FOR THE PENSION FUND

The Township contends it did not "maintain" the Pike Township Fire Department which is a prerequisite to 1937 pension fund eligibility under IC 19–1–37–1:

"A firemen's pension fund and a board of trustees of the firemen's pension fund are hereby created in every city in this state having a population of 114,500 or more according to the last preceding United States census and which maintains a regularly organized and paid fire department. The provisions of this act [19–1–37–1—19–1–37–28] in relation to such fund shall likewise apply to . . .

---

1. Apparently the Corporation employed additional firefighters who received only nominal compensation, as defined by IC 19–1–40–4, *infra*, and they therefore fell within the statutory volunteer fireman definition, IC 19–1–40–1, *infra.*

2. The 1977 pension fund contains a benefit conversion provision under IC 19–1–36.5–7 awarding each firefighter converting to the 1977 pension fund from the 1937 pension fund a lump sum payment of $10,000. Apparently this payment is what the Firemen are attempting to obtain by this suit.

townships . . . having a population of less than 114,500 which maintains (sic) a regularly organized and paid fire department, in case such . . . township . . . shall establish such board of trustees and firemen's pension fund, the provisions of this act in relation to such fund and such board of trustees shall apply to and govern such . . . township . . . ."

This contention is based on the fact that the Township did not directly pay the Firemen nor did it actually own any firefighting equipment. Rather the Corporation owned the equipment and the salaries paid to the Firemen were paid by the Corporation.

Like the trial court, we do not believe these distinctions compel a finding that the Township did not maintain the fire department. When construing a statute, words used are to be given their usual and ordinary meaning. We should not so construe a statute to wilfully and unnecessarily narrow its provisions. *Kranda v. Houser-Norborg Medical Corporation*, (1981) Ind.App., 419 N.E.2d 1024. *Webster's Third New International Dictionary* (Unabridged ed. 1976) defines "maintain" as to keep in a state of repair, efficiency or validity, to carry on or keep up, to provide for or bear the expense of.

The controlling factor involved here is that the Township did provide for and bore the expense of the Pike Township Fire Department, of which the Firemen were paid employees (as opposed to being volunteer firefighters). The Township cannot correctly contend it did not maintain the Pike Township Fire Department simply because it paid the Firemen indirectly through the Corporation.

We would like to clarify though the distinction between the Pike Township Volunteer Fire Department, Inc. and a fire department which is a "volunteer" fire company or association as defined by statute.

A volunteer fireman is defined in Ind. Code 19–1–40–1 as "a fireman who of his own free will has volunteered to assist either without compensation or for nominal compensation, in fighting all fires occurring within the corporate limits of the municipality of which he is an assigned member

. . . ." Nominal compensation is defined in Ind.Code 19–1–40–4 as "any sum of money not in excess of one thousand seven hundred fifty dollars [$1,750] per annum." Lastly, IC 19–1–40–3 defines volunteer fire company or volunteer fire-fighting association as "any company or association organized for the purpose of answering fire alarms and extinguishing fires, the members of which receive no compensation or nominal compensation for their services thus rendered . . . ."

Under these definitions the Pike Township Volunteer Fire Department, Inc. is voluntary in name only since five of its members are not volunteers due to their income levels and their membership in the Corporation makes it a non-volunteer company or association.

This non-volunteer status gives rise to the Firemen's 1937 pension fund eligibility since IC 19–1–37–1 requires the Township to have maintained a regularly organized and *paid* fire department.

The judgment of the trial court is affirmed.

MILLER and YOUNG, JJ., concur.